**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Carnes,* Slip Opinion No. 2018-Ohio-3256.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3256

THE STATE OF OHIO, APPELLEE, *v.* CARNES, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Carnes,* Slip Opinion No. 2018-Ohio-3256.]**

*Criminal law—R.C. 2923.13—Juvenile adjudication of delinquency as an element of the offense of having a weapon under a disability—Due process—A prior juvenile adjudication may be an element of a weapons-under-disability offense without violating due process under the Ohio or United States Constitutions.*

(No. 2017-0087—Submitted February 27, 2018—Decided August 15, 2018.)

APPEAL from the Court of Appeals for Hamilton County, No. C–150752, 2016-Ohio-8019.

_____

**DEGENARO, J.**

{¶ 1} In this discretionary appeal, we consider whether using a prior juvenile adjudication of delinquency for the commission of an offense that would have been felonious assault if it had been committed by an adult as an element of

the offense of having a weapon under disability as set forth in R.C. 2923.13(A)(2) violates due process. We conclude that it does not, and we affirm the judgment of the First District Court of Appeals.

## Relevant Facts and Procedural History

{¶ 2} Appellant, Anthony Carnes, was indicted by a grand jury in 2013 on one count of having a weapon while under a disability in violation of R.C. 2923.13(A)(2).[1] The alleged disability stemmed from Carnes's 1994 adjudication of delinquency as a juvenile for committing a felonious assault. He moved to dismiss the indictment, asserting that his uncounseled juvenile adjudication could not be used as a predicate for criminal conduct under R.C. 2923.13(A)(2), ultimately relying on *State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156. The trial court denied the motion to dismiss, and the matter proceeded to a jury trial, following which Carnes was convicted and sentenced.

{¶ 3} In a split decision, the First District upheld the trial court's denial of Carnes's motion to dismiss. 2016-Ohio-8019, 75 N.E.3d 774.

## Juvenile Adjudication as an Element of the Offense of Having a Weapon While Under a Disability

{¶ 4} Carnes frames the proposition before us broadly; he argues that a juvenile adjudication cannot be used to satisfy an element of any adult offense without violating due process. However, Carnes and appellee, the state of Ohio, limit the arguments in their briefs to whether a juvenile adjudication can be used as an element of the weapons-under-disability statute; thus, we limit our consideration to that statute exclusively and refrain from issuing a broader holding.

{¶ 5} Carnes urges us to hold that a juvenile adjudication cannot satisfy an element of an adult offense without violating due process, thereby extending our holdings in *Bode* and in *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73

---

[1] An additional charge of misdemeanor aggravated menacing was subsequently dismissed.

2

N.E.3d 448, which was decided during the pendency of Carnes's appeal to the First District.[2]

{¶ 6} In *Bode*, we considered whether a prior uncounseled juvenile adjudication of delinquency for an offense that was equivalent to operating a vehicle while intoxicated ("OVI") could be used to enhance the penalty for a subsequent adult OVI conviction. In an opinion that largely focused on the juvenile's due-process right to counsel, we held that an "adjudication of delinquency may not be used to enhance the penalty for a later offense when the adjudication carried the possibility of confinement, the adjudication was uncounseled, and there was no effective waiver of the right to counsel." *Id.*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 9.

{¶ 7} A little over a year later, in *Hand*, we considered whether the appellant's prior juvenile adjudication of delinquency for committing an aggravated robbery should operate as a first-degree-felony conviction to enhance his sentence. Hand contended that R.C. 2901.08(A), which would have treated his juvenile adjudication as an adult conviction for the purposes of sentence enhancement, violated his due-process rights under the Ohio and United States Constitutions and was inconsistent with *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). We agreed, declaring R.C. 2901.08(A) unconstitutional in this context and holding that because the adjudication process did not provide the right to a jury trial, "it is fundamentally unfair to treat a juvenile adjudication as a previous conviction that enhances either the degree of or the sentence for a subsequent offense committed as an adult." *Hand* at ¶ 37.

---

[2] Although Carnes's due-process argument in the court of appeals primarily focused on the uncounseled nature of his juvenile adjudication and whether his waiver of counsel in that proceeding was valid, he does not pursue that specific argument in this appeal.

**{¶ 8}** *Hand* is distinguishable from the situation presented in this case. The language of R.C. 2901.08(A) expressly provided that a juvenile adjudication "*is a conviction* for a violation of the law or ordinance for purposes of determining the offense with which the person should be charged and, if the person is convicted of or pleads guilty to an offense, the sentence to be imposed upon the person relative to the conviction or guilty plea." (Emphasis added.) R.C. 2901.08(A).

**{¶ 9}** By contrast, R.C. 2923.13, the weapons-under-disability statute, lists several discrete, alternative disability conditions, including but not limited to certain juvenile adjudications and adult convictions.

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

(1) The person is a fugitive from justice.

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

(4) The person is drug dependent, in danger of drug dependence, or a chronic alcoholic.

(5) The person is under adjudication of mental incompetence, has been adjudicated as a mental defective, has been committed to a mental institution, has been found by a court to be a mentally ill person subject to court order, or is an involuntary patient other than one who is a patient only for purposes of observation. As used in this division, "mentally ill person subject to court order" and "patient" have the same meanings as in section 5122.01 of the Revised Code.

R.C. 2923.13(A).

{¶ 10} Moreover, R.C. 2923.13(A)(2) does not use juvenile adjudications for sentence-enhancement purposes. Regardless of the predicate conduct, a violation of the statute is a third-degree felony. R.C. 2923.13(B). Further, the juvenile adjudication is an element of the offense; it *is* the disability. Carnes advocates that we extend *Hand* to this situation—because in his view, an element is more consequential—and at first blush, it is. However, the unique nature of the weapons-under-disability statute ultimately undermines this argument; that is, "only the existence of a disability * * * is at issue in the statute." *State v. Barfield*, 2017-Ohio-8243, 87 N.E.3d 233, ¶ 8 (1st Dist.).

{¶ 11} "It is basic hornbook law that the state under its police powers may impose restrictions on who may possess firearms." *State v. Taniguchi*, 74 Ohio St.3d 154, 157, 656 N.E.2d 1286 (1995). In crafting R.C. 2923.13, the General Assembly set forth several broad categories of disabling conditions as an element of the crime; notably, "a legal disability can arise from far less than a jury-eligible criminal conviction." *Barfield* at ¶ 10. For example, a person under indictment for any felony offense of violence or certain felony drug offenses is not permitted to carry a firearm. R.C. 2923.13(A)(2) and (3). And the mere fact of such an indictment—regardless of whether a trial is held or a conviction is subsequently

obtained—is sufficient to create a disability; a conviction under R.C. 2923.13(A)(2) or (3) may stand even "when there is an acquittal on, or dismissal of, the indictment which had formed the basis for the charge of having a weapon while under disability." *Taniguchi* at syllabus. R.C. 2923.13 also prohibits firearm possession by fugitives, persons legally deemed to be mentally incompetent, and those with conditions such as drug dependence, a danger of drug dependence, or chronic alcoholism. R.C. 2923.13(A)(1) and (4) through (5).

{¶ 12} Further, the legislature created a process whereby a person may seek relief from a disability. Subject to certain exceptions, "any person who is prohibited from acquiring, having, carrying, or using firearms may apply to the court of common pleas in the county in which the person resides for relief from such prohibition." R.C. 2923.14(A)(1). The common pleas court may grant relief

> (1) * * *
> (a) [i]f the disability is based upon * * * an adjudication, the applicant has been fully discharged from imprisonment, community control, post-release control, and parole * * *,
> * * *
> (2) [t]he applicant has led a law-abiding life since discharge or release, and appears likely to continue to do so,
> (3) [t]he applicant is not otherwise prohibited by law from acquiring, having, or using firearms.

R.C. 2923.14(D). Notably, Carnes failed to avail himself of this process.

{¶ 13} Both parties direct our attention to *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). Although *Lewis* involved a federal weapons-disability statute that did not include juvenile adjudications as a basis for a disability, it is nonetheless instructive. The issue in *Lewis* was whether a

defendant's existing prior conviction, which was flawed because the defendant had not been represented by counsel and therefore was subject to collateral attack, could constitute the predicate act for a subsequent conviction under the federal weapons-disability statute. *Id*. at 56.

{¶ 14} The *Lewis* court concluded that the prior conviction could constitute the predicate act, distinguishing caselaw that precluded the use of previous convictions to enhance a penalty or for sentencing purposes because the previous convictions were entered without the benefit of counsel and their reliability was questionable. *Id.* at 66-67, citing *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), and *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). The Supreme Court likewise found it notable that federal law provided a mechanism to obtain relief from the weapons disability. *Id.* at 64.

{¶ 15} Following a discussion of the legislative history of the federal weapons-under-disability statute, the court concluded that "the federal gun laws * * * focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons." *Lewis* at 67. In other words, the legislative purpose underlying the statute was " 'broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous.' " *Id*. at 64-65, quoting *Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976). Accordingly, the court concluded that "[e]nforcement of that essentially civil disability through a criminal sanction does not 'support guilt or enhance punishment,' see *Burgett*, 389 U.S., at 115, 88 S.Ct., at 262, on the basis of a conviction that is unreliable when one considers Congress' broad purpose." *Lewis* at 67.

{¶ 16} R.C. 2923.13 was enacted in 1972 as part of a bill that largely revamped Ohio's existing substantive criminal code. Am.Sub.H.B. No. 511, 134 Ohio Laws, Part II, 1866, 1966-1967; *see generally* Legislative Service Commission, *Summary of Am.Sub.H.B. 511, The New Ohio Criminal Code*,

Introduction, at v (1973). Inherent in R.C. 2923.13(A)(2) is a policy decision made by the legislature that allowing weapons in the hands of individuals with certain prior juvenile adjudications poses an increased risk to public safety, as does allowing weapons in the hands of those with other disabling conditions such as chronic alcoholism or drug dependence.

{¶ 17} The risk-assessment determination made by the General Assembly in enacting R.C. 2923.13 does not undermine the rehabilitative purpose of the juvenile-justice system, nor does it give rise to the due-process concerns we were called upon to resolve in *Hand*. Framed differently, the lack of a right to a jury trial, as well as other protections, does not make prior juvenile adjudications unreliable for risk-assessment purposes.

{¶ 18} Although we are not unsympathetic to Carnes's particular situation, we emphasize that it is not our role to second-guess the General Assembly's policy choices. *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 35. The dissent rightfully acknowledges that the General Assembly *could* initiate reforms to the weapons-under-disability statute to reflect emerging policy concerns, but so far it has not done so.

{¶ 19} Contrary to R.C. 2901.08(A)—the statute struck down in *Hand*—R.C. 2923.13(A)(2) does not deem the juvenile adjudication to be an adult conviction; the juvenile adjudication is itself an element of the offense. Regardless of the predicate conduct, a violation of R.C. 2923.13(A) is a third-degree felony; there is no sentence enhancement. For all of these reasons, we decline to extend *Hand*'s reach.

{¶ 20} Finally, we turn to amicus curiae Buckeye Firearms Association's contention that because a juvenile adjudication in Ohio is not a criminal conviction, the state is prohibited from criminalizing the legal possession of a firearm based upon a prior juvenile adjudication pursuant to the Second and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of the Ohio

Constitution. Because these arguments were not raised in the trial or appellate courts, they were not preserved for our consideration, and we decline to address them now. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15-16.

### Conclusion

{¶ 21} A prior juvenile adjudication may be an element of the weapons-under-disability offense set forth in R.C. 2923.13(A)(2) without violating due process under the Ohio or United States Constitutions. Because *Hand* is distinguishable, we decline to extend its holding to this case. Accordingly, the judgment of the First District Court of Appeals is affirmed.

Judgment affirmed.

O'DONNELL, CALLAHAN, FRENCH, KLATT, and SADLER, JJ., concur.

O'CONNOR, C.J., dissents, with an opinion.

LYNNE S. CALLAHAN, J., of the Ninth District Court of Appeals, sitting for KENNEDY, J.

WILLIAM A. KLATT, J., of the Tenth District Court of Appeals, sitting for FISCHER, J.

LISA L. SADLER, J., of the Tenth District Court of Appeals, sitting for DEWINE, J.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 22} I dissent. The General Assembly established Ohio's juvenile-justice system with the understanding that child offenders are fundamentally different from adult offenders. *See In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 66. We have repeatedly recognized the distinct purposes of juvenile and adult courts. *See*, *e.g., State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, ¶ 27-31; *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 7; *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729,

¶ 72. And in my dissenting opinion in *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883 (O'Connor, C.J., dissenting), I detailed many of the practical and constitutional differences between juvenile and adult courts.

{¶ 23} The law at issue in this case, R.C. 2923.13, does not consider these differences or comport with the rehabilitative goals of the juvenile-justice system. Rather than limiting a juvenile adjudication to its rehabilitative purpose and function, R.C. 2923.13 allows the long arm of the law to reach back well after the juvenile court's jurisdiction ends to seize a youthful adjudication and use it as the basis for a criminal penalty in adulthood—in this case a 30-month prison sentence. The effect is that a juvenile adjudication and disposition may punish an offender through adulthood without any notice to the juvenile that the disability exists or procedure for the juvenile court to consider if the facts of the case warrant the disability.

{¶ 24} If a juvenile crime is serious enough to potentially merit adult consequences, the state may seek to transfer the juvenile to adult court, R.C. 2152.12, or request the imposition of a serious-youthful-offender disposition, R.C. 2152.13. If the state does not avail itself of one of these options, then it is fundamentally unfair to use a juvenile adjudication to trigger adult criminal liability pursuant to R.C. 2923.13. Using a juvenile adjudication as a predicate disability is akin to using a juvenile adjudication as a sentencing enhancement. In *Hand* at ¶ 38, we found that using a juvenile adjudication as a sentencing enhancement was "inconsistent with Ohio's system for juveniles, which is predicated on the fact that children are not as culpable for their acts as adults and should be rehabilitated rather than punished."

**RELEVANT BACKGROUND**

{¶ 25} The majority refers to appellant's, Anthony Carnes's, 1994 adjudication of delinquency for committing a felonious assault. But information surrounding the facts is illuminating. While serious, the circumstances are not

particularly unusual and show a teenage disagreement that got out of hand. The assault stemmed from a fist fight when Carnes was 16 years old. The fight started as an argument between Carnes and another boy approximately his age. The two met to settle the argument, which led to a fight in which Carnes punched the other boy, causing him to lose four teeth. Carnes was arrested about one week after the fight. He was released but returned to court one month later for a hearing on the charges. He was accompanied at that hearing by his mother, who was a nurse. Although Carnes and his mother signed a waiver at that time, when Carnes was questioned during the current proceedings, he did not remember being offered an attorney or understand that he had waived his right to one. The state did not offer any of the victim's medical records into evidence to establish the fact or extent of injury. Carnes accepted a plea agreement, thereby avoiding an adjudicatory hearing. He was sent to a residential treatment facility, Hillcrest School, in lieu of a Department of Youth Services facility.

{¶ 26} Twenty years later, police responded to a 9-1-1 call reporting shots fired near Carnes's home. Although there was no testimony that Carnes was seen with a weapon, police located one in the back of his home. The police subsequently linked him to the gun using DNA evidence. He was indicted for violating R.C. 2923.13, having a weapon while under disability, and for violating R.C. 2903.21, aggravated menacing. The trial court dismissed the aggravated-menacing charge for want of prosecution.

## ANALYSIS

### A. Recent advancements in understanding the development of a juvenile's brain have led to greater scrutiny of juvenile-justice laws

{¶ 27} The General Assembly established Ohio's juvenile-justice system to achieve fundamentally different results than those reached in adult criminal courts:

The juvenile courts were premised on profoundly different assumptions and goals than a criminal court, *United States v. Johnson* (C.A.D.C.1994), 28 F.3d 151, 157 (Wald, J., dissenting), and eschewed traditional, objective criminal standards and retributive notions of justice. Instead, a new civil adjudication scheme arose, with a focus on the state's role as parens patriae and the vision that the courts would protect the wayward child from "evil influences," "save" him from criminal prosecution, and provide him social and rehabilitative services. *In re T.R.* (1990), 52 Ohio St.3d 6, 15, 556 N.E.2d 439; *Children's Home of Marion Cty. v. Fetter* (1914), 90 Ohio St. 110, 127, 106 N.E. 761; *Ex parte Januszewski* (C.C.Ohio 1911), 196 F. 123, 127.

*In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 66. Although the juvenile-justice system has always been premised on the notion that adult criminal court is inappropriate for most child offenders, only recently has medical evidence been offered to support that premise.

{¶ 28} Substantial scientific research during the last two decades has discovered significant physiological differences between child and adult brains. Citing this evidence, the United States Supreme Court recognized that in comparison to adults, "juveniles have a ' "lack of maturity and an underdeveloped sense of responsibility." ' " *Graham v. Florida*, 560 U.S. 48, 68, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), quoting *Roper v. Simmons*, 543 U.S. 551, 569-570, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), quoting *Johnson v. Texas*, 509 U.S. 350, 367, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). Juveniles " 'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure'; and their characters are 'not as well formed.' " *Id.*, quoting *Roper* at 569-570. Amici curiae Juvenile Law Center and National Juvenile Defender Center

submitted significant documentation of similar findings. In one article cited by the centers, Laurence Steinberg, a doctor of psychology with a focus on adolescent development, noted that "[a]dolescence is not just a time of tremendous change in the brain's structure. It is also a time of important changes in how the brain works." Steinberg, *Should the Science of Adolescent Brain Development Inform Public Policy?*, 50 Ct.Rev. 70 (2014). Steinberg made the following observations about structural changes that the brain undergoes during adolescence:

> First, over the course of adolescence and into early adulthood, there is a strengthening of activity in brain systems involving self-regulation. * * *
>
> Second, there are important changes in the way the brain responds to rewards. * * *
>
> A third change in brain function over the course of adolescence involves increases in the simultaneous involvement of multiple brain regions in response to arousing stimuli, such as pictures of angry or terrified faces.

*Id.* at 70-71. Steinberg concluded that "the consensus emerging from recent research on the adolescent brain is that teenagers are not as mature as adults in either brain structure or function." *Id.* at 71.

{¶ 29} Another article cited by the centers described evidence establishing that "the connectivity and efficiency of [cellular] connections" in the prefrontal cortex, the area of the brain responsible for executive functions including short-term memory, attention, inhibitory control, and decision making, "has been shown to continue developing throughout adolescence and early adulthood." Gruber & Yurgelun-Todd, *Neurobiology and the Law: A Role in Juvenile Justice?*, 3 Ohio St.J.Crim.L. 321, 324 (2006).

**{¶ 30}** A juvenile's brain is still developing until the juvenile is 18 years old and is no longer subject to juvenile adjudication, and likely well after. Recent studies suggest that juveniles are less able than adults to regulate their responses to external stimuli and to judge the consequences of their actions. *See, e.g.,* Steinberg at 71-72. I am not suggesting that this research absolves juveniles from all responsibility for their bad acts. But that research does suggest that even though our juvenile-justice system is based on the theories of protection, treatment, and rehabilitation, it is not properly designed to grapple with the realities of the not-yet-developed brains of juveniles.

**{¶ 31}** Although the legislative branch has been hesitant to enact reforms to juvenile-justice systems, courts have been willing to consider constitutional challenges to juvenile-justice laws in light of scientific studies involving juvenile brain development. In a series of cases, the United States Supreme Court has relied on such documentation and research to strike down certain juvenile-justice laws. For example, that court has held unconstitutional the imposition of the death penalty on juvenile offenders, *Roper*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1, and the sentencing of juvenile offenders for both nonhomicide and homicide crimes to life without possibility of parole as cruel and unusual punishment, *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407. The Supreme Court has acknowledged that "the case for retribution is not as strong with a minor as with an adult," *Roper* at 571, and also has concluded that as compared to adult offenders, juveniles have "diminished culpability and greater prospects for reform," *Miller* at 471.

**{¶ 32}** This court has echoed the Supreme Court's conclusions, determining that due to their lack of maturity, juvenile offenders who commit even the most heinous acts have a lesser moral culpability than adults who commit similar acts, *State v. Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, ¶ 58. *See also In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 40

(juveniles are not only "less culpable than adults, their bad acts are less likely to reveal an unredeemable corruptness").

**B. The mounting evidence of a juvenile's brain development suggests that R.C. 2923.13 as applied to juvenile adjudications is unjust**

{¶ 33} R.C. 2923.13 makes it a felony for an individual who was "adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence" or that, if committed by an adult, would have been a "felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse" to "knowingly acquire, have, carry, or use any firearm or dangerous ordinance." R.C. 2923.13(A)(2) to (3). The majority's decision upholding and applying R.C. 2923.13 to cases like Carnes's does not comport with the most recent studies pertaining to a juvenile's brain development. Additionally, permitting the juvenile adjudication to follow the juvenile into adulthood does not advance the protective or rehabilitative goals of the juvenile-justice system. Rather than limiting punishment for youthful indiscretions to the period in which a person was under the jurisdiction of the juvenile-justice system, R.C. 2923.13 allows a child's lapses in judgment to be a permanent stain on his criminal record—in this case, 20 years into the future—and allows those lapses to be the basis of penalties, including incarceration, when no crime would exist absent the juvenile adjudication.

{¶ 34} This disability contrasts starkly with the others mentioned in R.C. 2923.13. A majority of the other disabilities involve conduct, such as being a fugitive from justice, being under indictment for certain offenses, being drug dependent or a chronic alcoholic, or being under an adjudication of mental incompetence. R.C. 2923.13(A). The other disabilities involve one common link—conduct that has occurred when the defendant is an adult. But in Carnes's case, the General Assembly allows a juvenile adjudication to serve as the basis for an adult criminal penalty. Allowing a juvenile offense that was not serious enough

to merit transfer to an adult court to follow Carnes for 20 years directly contradicts the current scientific understanding of the juvenile brain. And it is inconsistent with Ohio's juvenile-justice system, which is based on rehabilitation, not punishment.

## C. Jurisprudence finding certain sentencing enhancements unconstitutional calls R.C. 2923.13 as applied to juvenile adjudications into question

{¶ 35} R.C. 2923.13 is unjust because it allows a juvenile adjudication to burden a child into adulthood; it is unconstitutional because it burdens an adult with a juvenile adjudication when the person as a juvenile was not afforded the full panoply of constitutional rights available to an adult in the criminal-justice system. The deprivation of a juvenile's rights is an intentional component of the juvenile-justice system. We have held that "[b]ecause of the state's stake in the rehabilitation of the juvenile offender and the theoretically paternal role that the state continues to play in juvenile justice, a balanced approach is necessary to preserve the special nature of the juvenile process while protecting procedural fairness." *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 49. Among the fundamental due-process rights denied to juveniles is the right to a jury trial. *Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, at ¶ 36.

{¶ 36} The United States Supreme Court has held that it is unlawful to enhance a sentence based on facts not found by a jury (or by a judge when the offender waived the right to a jury trial). *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The Supreme Court held that a judge is not permitted to make a finding of any fact, other than the fact of a prior conviction, when such a finding would subject the defendant to a penalty beyond the prescribed statutory maximum. *Id.* at 490. The court endorsed the principle that " 'it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.' " *Id.* at 490, quoting *Jones v. United States*, 526 U.S. 227, 252, 119 S.Ct.

1215, 143 L.Ed.2d 311 (1999) (Stevens, J., concurring). It also noted "the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." (Emphasis sic.) *Id.* at 482-483.

{¶ 37} In *State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, we considered the use of an uncounseled juvenile adjudication as a sentencing enhancement. In *Bode*, an uncounseled juvenile adjudication for operating a vehicle while intoxicated ("OVI") was counted as one of the five violations necessary to enhance an adult's charge for OVI to a felony OVI that required prison as punishment. *Id.* at ¶ 4. We held that an uncounseled juvenile adjudication during which the right to counsel was not waived could not be used to enhance a later violation of the OVI law that could lead to confinement. *Id.* at ¶ 17-18. We described Bode's juvenile adjudication as a "20-year ticking time bomb" and held that it was unconstitutional for an uncounseled juvenile adjudication to be used to enhance the punishment for a subsequent OVI charge. *Id.* at ¶ 25.

{¶ 38} In *Hand*, we applied the United States Supreme Court decision in *Apprendi*, expanded our ruling in *Bode*, and held that it was unconstitutional for any juvenile adjudication, not just an uncounseled one, to be the basis for a sentencing enhancement. *Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.2d 448, at ¶ 38. We recognized that juvenile adjudications do not have the same procedural safeguards as adult convictions, including the rights to a jury trial and to have guilt proved beyond a reasonable doubt. *Id.* at ¶ 26. We ruled that "[i]n order to continue holding that a jury trial is not required for juveniles, we must maintain the civil nature of juvenile adjudications. It is contradictory and fundamentally unfair to allow juvenile adjudications that result from these less

formal proceedings to be characterized as criminal convictions that may later enhance adult punishment." *Id.* at ¶ 35.

{¶ 39} Admittedly, the holdings in *Apprendi*, *Bode*, and *Hand* do not squarely align with this case. While those cases dealt with sentencing enhancements, Carnes's case involves an element of the offense, which is found by the jury. Even though the jury is the ultimate fact-finder as to the element of a qualifying juvenile adjudication, in reality, the jury has little choice but to affirm the juvenile adjudication that was made potentially years before and without the full due-process rights afforded to a criminal defendant. In this respect, the principles in *Apprendi*, *Bode*, and *Hand* do apply.

{¶ 40} In *Apprendi*, *Bode*, and *Hand*, there were constitutional deficiencies related to the sentence-enhancing violation. In each case, the lower court had increased the sentence based on the constitutionally deficient enhancement. In this case, Carnes's juvenile adjudication did not include all the due-process protections of an adult criminal conviction, but the court still used it to trigger an adult criminal sentence 20 years later. The only difference between this case and *Apprendi*, *Bode*, and *Hand* is that the weapons-under-disability conviction requires a jury finding, unlike the enhancements in those cases, which were determined by a judge. But as already explained, any opportunity for the jury to make a real choice is a chimera.

{¶ 41} The majority points out that " 'a legal disability can arise from far less than a jury-eligible criminal conviction.' " Majority opinion at ¶ 11, quoting *State v. Barfield*, 2017-Ohio-8243, 87 N.E.3d 233, ¶ 10 (1st Dist.). It is true that other named disabilities in R.C. 2923.13, i.e., being a fugitive from justice, under criminal indictment, or adjudicated mentally incompetent or mentally defective, do not require proof beyond a reasonable doubt. Although these disabilities are not subject to the highest standards of criminal due process, they do relate to the defendant's behavior as an adult, not a juvenile. Punishing an adult defendant

18

because of a juvenile adjudication is fundamentally different from punishing an adult defendant for behavior exhibited as an adult.

## D. The General Assembly should rewrite R.C. 2923.13 in light of mounting scientific research and recent due-process jurisprudence

{¶ 42} I am disappointed by the majority's decision today, but I am more vexed that the General Assembly has not already taken steps to change this law, particularly in light of the substantial scientific research and documentation that a juvenile's brain is underdeveloped, coupled with the related decisions by this court and the United States Supreme Court holding that juveniles are less culpable for their conduct and more likely to benefit from the rehabilitative efforts of our justice system than adult offenders.

{¶ 43} Not one person on this court, in the legislature, and I dare say, in the public at large would want to be held accountable, years later, as an adult, for decisions that were made as a 16 year old and adjudicated in the juvenile system. This court has in the past affirmed the legislature's decision to allow punishment for certain juvenile offenses to continue into adulthood, but only when it has found that the law afforded the juvenile sufficient procedural safeguards. R.C. 2923.13 offers no such protections, not even a requirement that the court notify the juvenile that the disposition carries with it a weapons disability. And when a juvenile does not know that he has a weapons disability, the process to relieve himself of that disability has zero meaning. Without substantial procedural protections, the consequences of an adjudication of delinquency must have an end that is linked to the age of the child. To have the consequences follow the juvenile when he becomes an adult, with no time limitation, is profoundly unfair. I would find it unconstitutional to use a juvenile adjudication as a predicate disability, I would strike the relevant language from R.C. 2923.13(A)(2) and (3), and I would reverse the judgment of the First District Court of Appeals.

{¶ 44} I dissent.

19

_____

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Scott M. Heenan, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Peter Galyardt, Assistant Public Defender, for appellant.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Cuyahoga County Prosecutor's Office.

Ronald Lemieux, urging reversal for amicus curiae Buckeye Firearms Association.

Juvenile Law Center and Marsha L. Levick; and Winston & Strawn, L.L.P., Samuel S. Park, and John E. Drosick, urging reversal for amicus curiae Juvenile Law Center.

Nadia N. Seeratan, urging reversal for amicus curiae National Juvenile Defender Center.

_____