[Cite as *State v. Shazier*, 2019-Ohio-4409.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLANT/
    CROSS-APPELLEE,

                                  CASE NO. 8-19-12

    v.

MARCEL D. SHAZIER,

                                  O P I N I O N

    DEFENDANT-APPELLEE/
    CROSS-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 18 09 0283

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

Date of Decision: October 28, 2019

APPEARANCES:

    *Alice Robinson-Bond* for Appellant/Cross-Appellee

    *Stephen P. Hardwick* for Appellee/Cross-Appellant

**PRESTON, J.**

{¶1} Plaintiff-appellant/cross-appellee, the State of Ohio, appeals the March 4, 2019 judgment of the Logan County Court of Common Pleas sentencing defendant-appellee/cross-appellant, Marcel D. Shazier ("Shazier"), to five years of community control for attempted failure to provide notice of change of address. Shazier appeals the March 4, 2019 judgment of the Logan County Court of Common Pleas on the basis that his due process rights were violated when the trial court accepted his guilty plea. For the reasons that follow, we affirm Shazier's conviction but reverse Shazier's sentence and remand for resentencing.

{¶2} This case arises from Shazier's repeated failure to comply with his sex-offender notification requirements. On August 24, 2011, Shazier was adjudicated delinquent by reason of rape in violation of R.C. 2907.02(A)(1), a first-degree felony if committed by an adult, in Clark County Juvenile Court Case Number 2011-628. (*See* Doc. No. 4); (PSI at 3). As a result, Shazier was classified as a Tier I sex offender and ordered to register with the county sheriff once every year for ten years. (PSI at 4). In 2013, Shazier, who was by then an adult, was convicted in Clark County, Ohio of one felony count of attempted failure to provide notice of change of address. (*Id.*); (Feb. 5, 2019 Tr. at 8-9); (Mar. 4, 2019 Tr. at 6). Shazier was sentenced to one year of community control, which he successfully completed in 2014. (PSI at 4). In 2017, Shazier was convicted in Logan County, Ohio of one

count of attempted failure to provide notice of change of address, a second-degree felony. (*Id.*); (Feb. 5, 2019 Tr. at 3-4, 9); (Mar. 4, 2019 Tr. at 3, 6). Consequently, Shazier was sentenced to five years of community control. (Feb. 5, 2019 Tr. at 3-4, 9); (Mar. 4, 2019 Tr. at 3). Nevertheless, in August 2018, Shazier again failed to notify his supervising officer of a change of address. (*See* Doc. No. 4); (Feb. 5, 2019 Tr. at 5-10).

{¶3} On October 9, 2018, the Logan County Grand Jury indicted Shazier on one count of failure to provide notice of change of address in violation of R.C. 2950.05(F)(1) and 2950.99(A)(1)(a)(ii), a first-degree felony. (Doc. No. 4). On October 12, 2018, Shazier appeared for arraignment and pleaded not guilty to the count of the indictment. (Doc. No. 13).

{¶4} A change-of-plea hearing was held on February 5, 2019. (Doc. Nos. 27, 29); (Feb. 5, 2019 Tr. at 1, 5). At the change-of-plea hearing, the indictment was amended to charge Shazier with one count of attempted failure to provide notice of change of address in violation of R.C. 2950.05(F)(1), 2950.99(A)(1)(a)(ii), and 2923.02(A), (E)(1), a second-degree felony. (Doc. Nos. 28, 29); (Feb. 5, 2019 Tr. at 5, 27). Under a negotiated plea agreement, Shazier withdrew his previous not guilty plea and pleaded guilty to the count of the amended indictment. (Doc. Nos. 28, 29); (Feb. 5, 2019 Tr. at 37-38). The trial court accepted Shazier's guilty plea

and found him guilty. (Doc. No. 29); (Feb. 5, 2019 Tr. at 38). The trial court filed its judgment entry of conviction on February 6, 2019. (Doc. No. 29).

{¶5} On March 4, 2019, the trial court sentenced Shazier to five years of community control as well as six months in the Logan County Jail. (Doc. No. 30).

{¶6} On March 11, 2019, the State filed a notice of appeal. (Doc. No. 34). On June 6, 2019, Shazier filed a motion for leave to file a delayed notice of cross-appeal, along with a notice of cross-appeal. On June 27, 2019, this court granted Shazier leave to file his delayed notice of cross-appeal. The State raises one assignment of error for our review. Shazier raises two assignments of error for our review. For ease of discussion, we will first address Shazier's first assignment of error. Then, we will consider the State's assignment of error and Shazier's second assignment of error together.

### Shazier's Assignment of Error No. I

**The trial court erred by accepting a guilty plea from someone who could not have committed the charged offense. Entry (Mar. 4, 2019); Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.**

{¶7} In his first assignment of error, Shazier argues that the trial court erred by accepting his guilty plea to the offense of attempted failure to provide notice of change of address. Shazier claims that the trial court erred by accepting his guilty plea because "no reasonable jury could find [him] guilty of failing to notify because his juvenile adjudication cannot be used as a predicate to increase his criminal

-4-

responsibility from none to the punishment for a * * * felony." (Appellee/Cross-Appellant's Brief at 14). Specifically, he argues that using his juvenile adjudication as an element of the offense to which he pleaded guilty violates his constitutional rights to due process of law. (*Id.* at 14-21).

{¶8} At the outset, we must consider whether Shazier's guilty plea precludes our consideration of the merits of his first assignment of error. Generally, a defendant who enters a guilty plea waives the right to appeal all nonjurisdictional errors arising at prior stages of the proceedings unless those errors prevented the defendant from knowingly, intelligently, and voluntarily entering his guilty plea. *State v. Kuhner*, 154 Ohio App.3d 457, 2003-Ohio-4631, ¶ 4 (3d Dist.), citing *Ross v. Common Pleas Court of Auglaize Cty.*, 30 Ohio St.2d 323 (1972); *State v. Howard*, 4th Dist. Scioto No. 16CA3762, 2017-Ohio-9392, ¶ 69 ("[A] voluntary, knowing, and intelligent guilty plea waives any alleged constitutional violations unrelated to the entry of the guilty plea and nonjurisdictional defects in the proceedings."), citing *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 105 and *State v. Storms*, 4th Dist. Athens No. 05CA30, 2006-Ohio-3547, ¶ 9. However, "[a] guilty plea does not * * * 'waive a claim that judged on its face the charge is one which the State may not constitutionally prosecute,'" and this is precisely the claim Shazier raises in this case. *State v. Legg*, 4th Dist. Pickaway No. 14CA23, 2016-Ohio-801, ¶ 12, quoting *Menna v. New York*, 423 U.S. 61, 62, 96 S.Ct. 241

(1975), fn. 2. *Accord State v. Rolland*, 7th Dist. Mahoning No. 12MA68, 2013-Ohio-2950, ¶ 9, citing *State v. Wilson*, 58 Ohio St.2d 52, 54-55 (1979). Furthermore, "[e]ven where waiver is clear, [we] reserve[] the right to consider constitutional challenges to the application of statutes * * * where the rights and interests involved may warrant it." *In re M.D.*, 38 Ohio St.3d 149 (1988), paragraph one of the syllabus. Therefore, despite the fact that Shazier did not raise his constitutional challenge at the trial court level, in the interests of justice, and considering the aforementioned authority, we will examine his constitutional argument. *Rolland* at ¶ 10.

{¶9} Shazier argues that his attempted-failure-to-provide-notice-of-change-of-address conviction should be vacated because his juvenile sex-offense adjudication cannot serve as the predicate for the offense. He insists that this result is required by the Supreme Court of Ohio's decision in *State v. Hand*. In *Hand*, the defendant pleaded no contest to three first-degree felony counts and two second-degree felony counts, as well as five three-year firearm specifications. 149 Ohio St.3d 94, 2016-Ohio-5504, ¶ 2. The parties agreed to an aggregate six-year prison sentence with the understanding that three years of the sentence would be mandatory due to the firearm specifications. *Id.* at ¶ 3. However, the parties disputed whether the remaining three years of the aggregate six-year sentence would also be a mandatory term. *Id.* In particular, the "question was whether [the defendant's] prior

juvenile adjudication for aggravated robbery * * * should operate as a first-degree-felony conviction to enhance his sentence" under R.C. 2929.13(F)(6), which requires a mandatory prison term for a first- or second-degree felony if the offender has previously been convicted of or pleaded guilty to a first- or second-degree felony. *Id.* To settle the dispute, the trial court relied on R.C. 2901.08(A), which provided, in relevant part:

> If a person is alleged to have committed an offense and if the person previously has been adjudicated a delinquent child * * * for a violation of a law * * *, the adjudication as a delinquent child * * * is a conviction for a violation of the law * * * for purposes of determining * * *, if the person is convicted of or pleads guilty to an offense, the sentence to be imposed upon the person relative to the conviction or guilty plea.

*Id.* at ¶ 4. *See* R.C. 2901.08(A) (Sept. 30, 2011). Pursuant to R.C. 2901.08(A), the trial court treated the defendant's juvenile adjudication as a prior conviction and ruled that his juvenile adjudication therefore required the imposition of a mandatory prison term under R.C. 2929.13(F)(6). *Hand* at ¶ 4. Accordingly, the trial court sentenced the defendant to an aggregate six-year mandatory term of incarceration. *Id.*

{¶10} Before the Supreme Court of Ohio, the defendant argued that "his right to due process was violated when his past juvenile adjudication was used to make his prison term mandatory," specifically because his juvenile adjudication was not obtained using procedures that provided for the right to a jury trial. *Id.* at ¶ 11, 20. The court agreed. It noted that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt'" and that "facts increasing a mandatory minimum sentence must also be submitted to a jury and found beyond a reasonable doubt." *Id.* at ¶ 21-22, quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348 (2000) and citing *Alleyne v. United States*, 570 U.S. 99, 114-117, 133 S.Ct. 2151 (2013). The court explained that "prior convictions are treated differently only because 'unlike virtually any other consideration used to enlarge the possible penalty for an offense, * * * a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.'" *Id.* at ¶ 31, quoting *Jones v. United States*, 526 U.S. 227, 249, 119 S.Ct. 1215 (1999). The court held that "[b]ecause a juvenile adjudication is not established through a procedure that provides the right to a jury trial, it cannot be used to increase a sentence beyond a statutory maximum or mandatory minimum." *Id.* at ¶ 34. According to the court, "it is fundamentally unfair to treat a juvenile adjudication as a previous conviction

that enhances either the degree of or the sentence for a subsequent offense committed as an adult." *Id.* at ¶ 37.

**{¶11}** Taken alone, *Hand* would appear to lend support to Shazier's position. However, as Shazier acknowledges, the Supreme Court of Ohio subsequently declined to extend the holding of *Hand*. *See State v. Carnes*, 154 Ohio St.3d 527, 2018-Ohio-3256, ¶ 19. In *Carnes*, the defendant was convicted of one count of having weapons while under disability in violation of R.C. 2923.13(A)(2). *Id.* at ¶ 2. The defendant's alleged disability stemmed from his earlier juvenile adjudication for felonious assault. *Id.* On appeal, the defendant urged the court to extend *Hand* to hold that a juvenile adjudication cannot satisfy an element of any adult offense without violating due process. *Id.* at ¶ 4-5. However, the court declined the defendant's invitation to issue a broad ruling and instead focused exclusively on the weapons-under-disability statute, which it found to be distinguishable from the statutes in question in *Hand*. *Id.* at ¶ 4, 8.

**{¶12}** First, the court noted that unlike R.C. 2901.08(A), which "expressly provided that a juvenile adjudication '*is a conviction*,'" "R.C. 2923.13, the weapons-under-disability statute, lists several discrete, alternative disability conditions, including but not limited to certain juvenile adjudications and adult convictions." (Emphasis sic.) *Id.* at ¶ 8-9. Thus, in contrast to R.C. 2901.08(A), the weapons-under-disability statute "does not deem [a] juvenile adjudication to be an

adult conviction." *Id.* at ¶ 19. In addition, the court observed that the weapons-under-disability statute "does not use juvenile adjudications for sentence-enhancement purposes" as was the case when R.C. 2901.08(A) and 2929.13(F)(6) were read together. *Id.* at ¶ 10. Rather, "the juvenile adjudication is an element of the offense," and this fact, that the juvenile adjudication is an element of the offense instead of a sentence-enhancer, is not "more consequential" because "'only the existence of a disability * * * is at issue in the statute.'" *Id.*, quoting *State v. Barfield*, 1st Dist. Hamilton No. C-160768, 2017-Ohio-8243, ¶ 8. Furthermore, the court found it notable that "the legislature created a process whereby a person may seek relief from a disability" and that the defendant "failed to avail himself of this process." *Id.* at ¶ 12. Finally, the court stated that "a policy decision made by the legislature that allowing weapons in the hands of individuals with certain prior juvenile adjudications poses an increased risk to public safety" is embodied in the weapons-under-disability statute and that "the lack of a right to a jury trial, as well as other protections, does not make prior juvenile adjudications unreliable for risk-assessment purposes." *Id.* at ¶ 16-17. For all of these reasons, the court concluded that "[a] prior juvenile adjudication may be an element of the weapons-under-disability offense set forth in R.C. 2923.13(A)(2) without violating due process under the Ohio or United States Constitutions." *Id.* at ¶ 21.

{¶13} Although Shazier recognizes that *Carnes* limits the holding in *Hand*, he reasons that *Carnes* does not control the outcome in this case because in *Carnes*, the "Ohio Supreme Court relied on the 'unique nature of the weapons-under-disability statute.'" (Appellee/Cross-Appellant's Brief at 15). He argues that *Hand* is the controlling case because the "logic of *Hand* applies even more strongly to a case in which a prior adjudication is a statutory element of an offense than it does to a case in which the adjudication turns a non-mandatory sentence into a mandatory one." (*Id.* at 19).

{¶14} Shazier's argument is without merit. Two of our sister appellate districts have previously considered whether *Hand* precludes the use of a juvenile sex-offense adjudication as the predicate offense for a failure-to-register or a failure-to-notify offense committed as an adult. *State v. Young*, 4th Dist. Lawrence No. 17CA11, 2018-Ohio-4990, appeal allowed, 155 Ohio St.3d 1405, 2019-Ohio-944; *State v. Buttery*, 1st Dist. Hamilton No. C-160609, 2017-Ohio-9113, appeal allowed, 152 Ohio St.3d 1462, 2018-Ohio-1795.[1] Both of these courts have concluded that it does not.

{¶15} In *Buttery*, which was decided before the Supreme Court of Ohio issued its decision in *Carnes*, the First District explained the differences between R.C. 2950.04, the duty-to-register statute, and the statutes at issue in *Hand*:

---

[1] The Supreme Court of Ohio heard oral argument in *Buttery* on August 6, 2019.

R.C. 2950.04 distinguishes between an adult offender convicted of a sexually-oriented offense and a juvenile adjudicated delinquent and classified for having committed a sexually-oriented offense. While both are required to register under the statute, the registration requirements are based on either an adult conviction or a juvenile adjudication. The statute does not treat a juvenile adjudication as a conviction; the juvenile is required to register based upon the juvenile adjudication and classification. The registration requirement does not depend on an adult conviction. Like the juvenile adjudication constituting the disability element in the weapons-under-disability cases, the juvenile adjudication for a sexually-oriented offense requires registration in its own right. The juvenile adjudication is not a penalty-enhancing element; it is an element of the crime of failing to register.

*Buttery* at ¶ 20. Given these differences between R.C. 2950.04 and the statutes at issue in *Hand*, the First District concluded that "*Hand* does not bar the use of [a] juvenile adjudication as the basis of * * * [a] conviction for failing to register." *Id.* at ¶ 21.

{¶16} Likewise, in *Young*, the Fourth District reached a similar conclusion with respect to R.C. 2950.05, the duty-to-notify statute under which Shazier was

-12-

convicted. In *Young*, which was decided after *Carnes*, the Fourth District found that "[n]one of the language in [R.C. 2950.05(F)(1)] suggests that a juvenile adjudication constitutes an adult conviction." *Young* at ¶ 12. The court found that "the duty-to-notify provision does not equate a juvenile adjudication to an adult conviction and it does not enhance the failure-to-notify penalty due to a prior juvenile adjudication." *Id.* Moreover, the court noted that "R.C. Chapter 2950, including the failure-to-notify provision, reflects a legislative policy decision that individuals labeled as juvenile sex offenders pose an increased risk to public safety and that requiring these individuals to comply with the registration and notification provisions attempts to minimize that risk." *Id.* at ¶ 13, citing R.C. 2950.02 and *State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, ¶ 36. As a result, the court determined that R.C. 2950.05(F)(1) "contains none of the evils the *Carnes* court suggested might make a statute constitutionally infirm when applied to juvenile adjudications." *Id.* Accordingly, the court concluded that the defendant's "failure-to-notify conviction [did not] obviously violate[] his due process rights." *Id.* at ¶ 16.

{¶17} We agree with the First and Fourth Districts' analyses. R.C. 2950.05 clearly does not treat a juvenile sex-offense adjudication as an adult conviction. Instead, a person's duty to provide notice of a change of address can arise from either a juvenile sex-offense adjudication or an adult conviction. *See* R.C.

2950.05(A)-(B). Like the weapons-under-disability statute, in which a juvenile adjudication serves as an alternative disability condition, R.C. 2950.05 treats a juvenile sex-offense adjudication as a discrete and sufficient basis to require a person to provide notice of a change of address. Furthermore, R.C. 2950.05 does not use the fact of a prior juvenile sex-offense adjudication to enhance the degree of or the sentence for a failure-to-provide-notice-of-change-of-address offense. Instead, the degree of and sentence for a failure-to-provide-notice-of-change-of-address offense are inextricably linked to the type and degree of the offense that gave rise to the offender's duty to provide notice of a change of address. *See* R.C. 2950.99(A)(1). Therefore, in this respect, R.C. 2950.05 is also analogous to the weapons-under-disability statute that survived constitutional challenge in *Carnes*. Finally, as noted by the Fourth District in *Young*, R.C. Chapter 2950, including R.C. 2950.05's notification requirements, reflects a legislative policy judgment that "[s]ex offenders and child-victim offenders pose a risk of engaging in further sexually abusive behavior even after being released from [confinement]" and that this risk may be mitigated "[i]f the public is provided adequate notice and information about offenders and delinquent children who commit sexually oriented offenses or who commit child-victim oriented offenses * * *." R.C. 2950.02(A)(1)-(2). We believe that the lack of the right to a jury trial does not make a juvenile sex-offense adjudication unreliable for risk-assessment purposes, and in this way, R.C.

2950.05 shares further similarities with the weapons-under-disability statute. *See Carnes*, 154 Ohio St.3d 527, 2018-Ohio-3256, at ¶ 16-17.

{¶18} In sum, we conclude that *Hand* does not bar the use of a prior juvenile sex-offense adjudication as an element of a failure-to-provide-notice-of-change-of-address offense or, in this case, an attempted-failure-to-provide-notice-of-change-of-address offense. Therefore, we conclude that Shazier's constitutional rights to due process were not violated when the trial court accepted his guilty plea.

{¶19} Shazier's first assignment of error is overruled.

### The State's Assignment of Error

**Whether the trial court abused its discretion in sentencing the Appellant [sic] to community control where the statute requires a mandatory prison sentence?**

### Shazier's Assignment of Error No. II

**If this Court orders the trial court to impose a prison term pursuant to the State's assignment of error, this Court should also vacate the decision to impose court costs and court-appointed-counsel fees. Judgment Entry/Sentencing (Mar. 4, 2019) R.C. 2941.51(D).**

{¶20} In its assignment of error, the State argues that Shazier's sentence is contrary to law. Specifically, the State argues that because Shazier had previously pleaded guilty to a first- or second-degree felony, the trial court did not have the ability to sentence Shazier to community control for the instant offense of second-degree felony attempted failure to provide notice of change of address.

(Appellant/Cross-Appellee's Brief at 2-3). In his second assignment of error, Shazier argues that if the State's assignment of error is sustained, we should also vacate the portion of the trial court's March 4, 2019 judgment ordering him to pay court costs and attorney's fees because the trial court must consider whether a prison term will impact his ability to pay such costs. (Appellee/Cross-Appellant's Brief at 21).

{¶21} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶22} After reviewing the record, we conclude that Shazier's sentence is clearly and convincingly contrary to law. Generally, trial courts have broad discretion to fashion appropriate sentences for felony offenders. *See* R.C. 2929.13(A) (Oct. 31, 2018). Here, Shazier pleaded guilty to attempted failure to provide notice of change of address, a second-degree felony. "Except as provided in [R.C. 2929.13(E) or (F)], for a felony of the * * * second degree, * * * it is

presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing under [R.C. 2929.11]." R.C. 2929.13(D)(1) (Oct. 31, 2018). Even so, a trial court may impose a community control sanction or a combination of community control sanctions instead of a prison term on a second-degree felony offender if the trial court finds that a community control sanction would adequately punish the offender, protect the public from future crime, and not demean the seriousness of the offense. R.C. 2929.13(D)(2) (Oct. 31, 2018). Accordingly, although it is presumed that a prison term is required for a second-degree felony conviction, a prison term is not mandatory in every instance.

{¶23} However, as indicated in the preceding paragraph, R.C. 2929.13(D) is expressly subject to the requirements of R.C. 2929.13(F). "R.C. 2929.13(F) addresses mandatory prison terms and lists offenses for which a sentencing court is obligated to impose a prison term." *State v. Johnson*, 116 Ohio St.3d 541, 2008-Ohio-69, ¶ 9. As relevant to this case, R.C. 2929.13(F) provides:

> (F) Notwithstanding [R.C. 2929.13(A) to (E)], the court shall impose a prison term * * * under * * * [R.C. 2929.14] * * * for any of the following offenses:
>
> * * *
>
> (6) Any offense that is a * * * second degree felony and that is not set forth in [R.C. 2929.13(F)(1), (2), (3), or (4)], if the offender

previously was convicted of or pleaded guilty to * * * any * * * second

degree felony * * *[.]

R.C. 2929.13(F)(6) (Oct. 31, 2018). Thus, "R.C. 2929.13(F)(6) requires a mandatory prison term for any offense that is a * * * second-degree felony when the defendant has a prior conviction for a * * * second-degree felony." *State v. Kinney*, 1st Dist. Hamilton No. C-160415, 2018-Ohio-404, ¶ 23.

**{¶24}** Applying the foregoing to the facts of this case, we conclude that under R.C. 2929.13(F)(6), the trial court was required to sentence Shazier to a prison term. As noted above, the instant offense was not the first offense to which Shazier pleaded guilty. As an adult, Shazier pleaded guilty to felony offenses on two previous occasions, and it is certain that at least one of the offenses to which he previously pleaded guilty was a second-degree felony. (PSI at 4); (Feb. 5, 2019 Tr. at 3-4, 9); (Mar. 4, 2019 Tr. at 3, 6). Furthermore, Shazier's present attempted-failure-to-provide-notice-of-change-of-address conviction is a second-degree felony and is not one of the offenses set forth in R.C. 2929.13(F)(1), (2), (3), or (4). Therefore, because Shazier pleaded guilty to a second-degree felony after having earlier pleaded guilty to a different second-degree felony, R.C. 2929.13(F)(6) required the trial court to impose a prison term; the trial court was not authorized to impose a community-control sanction.

{¶25} Shazier concedes that R.C. 2929.13(F)(6) appears to require the imposition of a prison term under the facts of this case. (Appellee/Cross-Appellant's Brief at 7). However, he argues that in sentencing him to a community-control sanction, "[t]he trial court correctly navigated between two code sections that, when viewed in isolation, appear to require different results under the facts of this case—R.C. 2929.11 requires community control, and R.C. [2929.13(F)(6)] appears to require prison." (*Id.*). Shazier contends that when R.C. 2929.11 and 2929.13(F)(6) are read together, the trial court was required to sentence him to community control because R.C 2929.13(F)(6) "applies 'notwithstanding' [R.C. 2929.13(A) to (E)], but does not apply 'notwithstanding' R.C. 2929.11" and "R.C. 2929.11 expressly states that it describes the 'overriding' purposes of felony sentencing, which, by its own terms, 'overrides' other sentencing provisions." (*Id.*).

{¶26} Shazier's arguments are unpersuasive. First, we believe that Shazier misunderstands the meaning of the word "overriding" as it is used in R.C. 2929.11. R.C. 2929.11 provides in pertinent part:

(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the

> minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. * * *
>
> (B) A sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing * * *.

R.C. 2929.11(A), (B). In our view, use of the term "overriding" in R.C. 2929.11 merely suggests that although there may be purposes of felony sentencing other than those listed in R.C. 2929.11(A), such purposes are subordinate to the "overriding" purposes of felony sentencing. In other words, when selecting between possible sentences, R.C. 2929.11 directs trial courts to choose the sentence that reasonably accomplishes the three "overriding" purposes of felony sentencing rather than a sentence that achieves some inferior purpose. There is simply nothing in R.C. 2929.11 indicating that the legislature intended to "override" all other sentencing statutes by authorizing a trial court to deviate from clear sentencing directives, including R.C. 2929.13(F)'s mandatory-prison-term requirement, if the trial court concludes that a particular sentence, though mandated by statute under the facts of the case, is, in its own judgment, poorly calculated to achieve the purposes of felony sentencing.

{¶27} Moreover, other felony-sentencing statutes foreclose Shazier's interpretation of R.C. 2929.11 and 2929.13(F)(6). R.C. 2929.12(A) provides that

"[u]nless otherwise required by [R.C. 2929.13] * * *, a court that imposes a sentence under [Chapter 2929] upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in [R.C. 2929.11]."  R.C. 2929.12(A) therefore recognizes that a trial court's discretion to determine the most effective way to comply with the overriding purposes of felony sentencing may be curtailed by the legislature, and throughout R.C. 2929.13, the legislature did just that.  In R.C. 2929.13(F)(6), the legislature determined that, regardless of R.C. 2929.13(D)(1)'s presumption that a prison term is necessary to achieve the overriding purposes of felony sentencing, a prison term is mandatory for a second-degree felony offense if the offender was previously convicted of or pleaded guilty to a second-degree felony.  Therefore, in R.C. 2929.13(F)(6), the legislature acknowledged the (restricted) discretion trial courts have under R.C. 2929.13(D)(1) and (2) to determine whether prison terms are necessary to achieve the overriding purposes of felony sentencing as to second-degree felonies generally, but decided that trial courts should not have the same discretion with respect to successive second-degree felony convictions.  In essence, the legislature concluded that a prison term is conclusively the sentence most reasonably calculated to achieve the overriding purposes of felony sentencing under the circumstances set forth in R.C. 2929.13(F)(6).  While R.C. 2929.13(F)(6) does not state that it applies "notwithstanding R.C. 2929.11," R.C. 2929.11 and the

overriding purposes of felony sentencing are clearly accounted for in R.C. 2929.13(F)(6).

{¶28} In sum, we conclude that because Shazier pleaded guilty to the instant offense, a second-degree felony, after having previously pleaded guilty to a different second-degree felony, the trial court was not authorized to sentence Shazier to a community-control sanction, but was instead required to sentence him to a prison term under R.C. 2929.13(F)(6). Therefore, because Shazier was sentenced to a community-control sanction rather than a prison term, we conclude that Shazier's sentence is clearly and convincingly contrary to law. Accordingly, the State's assignment of error is sustained.

{¶29} Having sustained the State's assignment of error, we may now consider Shazier's second assignment of error, in which he argues that the judgment for court costs and court-appointed-counsel fees should also be vacated so that the trial court may reconsider whether to hold him responsible for payment of such costs and fees in light of the fact that he will now be required to serve a prison term. With respect to Shazier's second assignment of error, the State "agrees that if this Court should remand the case for further sentencing hearing, the trial court would also be able to consider the issue of court[] costs and fees at that time." (Appellant/Cross-Appellee's Reply and Answer Brief at 6). We agree that, on remand, it would be appropriate for the trial court to reconsider Shazier's responsibility for paying court

costs and court-appointed-counsel fees.  Thus, Shazier's second assignment of error is sustained.

{¶30} Having found no error prejudicial to the appellee/cross-appellant herein in the particulars assigned and argued with respect to his first assignment of error, we affirm the judgment of the trial court as to that matter.  However, having found error prejudicial to the appellant/cross-appellee herein in the particulars assigned and argued and to the appellee/cross-appellant with respect to his second assignment of error, we reverse the judgment of the trial court as to those matters and remand to the trial court for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**