DECISION
{¶ 1} Petitioner-appellant Christopher Smith appeals the Hamilton County Common Pleas Court's judgment denying his R.C. 2953.21 petition for postconviction relief. He presents on appeal a single assignment of error, in which he challenges the court's denial of his petition without an evidentiary hearing. Upon our determination that Smith was entitled to a hearing, we reverse the judgment of the court below.
 I. Procedural Posture {¶ 2} On January 9, 2006, Smith was indicted on two counts of attempted murder, three counts of felonious assault, two counts of aggravated robbery, two counts of robbery, and single counts of carrying a concealed weapon and having a weapon under a disability. The charges arose in connection with several armed robberies, followed by an encounter with two Cincinnati police detectives that culminated with Smith shooting one of the detectives in the knee.
 {¶ 3} On January 20, the trial court appointed the Hamilton County Public Defender to represent Smith and continued the case to February 1. On February 1, Smith retained attorney Kenneth L. Lawson.
 {¶ 4} Lawson filed discovery requests and secured a series of continuances. On March 6, the trial judge disqualified herself and the case was reassigned. The new judge, at Lawson's request, continued the case to August 21 for trial, that date being the "first available date for counsel and the court."
 {¶ 5} On August 3, Lawson again moved for a continuance, for the reason that he would be "out of the office from August 8, 2006, through * * * August 22, 2006 for an urgent and personal matter." The court continued the case to October *Page 3 17. On that date, Smith withdrew his initial pleas of not guilty and entered no-contest pleas to all counts.
 {¶ 6} The trial court accepted Smith's pleas, found him guilty as charged, and set sentencing for October 31. The court also afforded the parties an opportunity to submit sentencing memoranda. The state submitted a memorandum "urg[ing] the Court to impos[e] either the maximum sentence permitted by law and/or a substantial sentence involving `high-end' consecutive sentences * * * ." Lawson submitted nothing.
 {¶ 7} At the sentencing hearing, following his review of the presentence-investigation report, Lawson, at Smith's request, orally moved to withdraw Smith's no-contest pleas. Lawson sought to withdraw Smith's pleas because, in Lawson's words, (1) Smith "believe[d] that he should not have been convicted of all charges on a no-contest plea * * * because there was only one shot fired," (2) Smith had previously discussed with Lawson his belief that he had acted in self-defense and had, when he entered his pleas, "believe[d] that he c[ould] admit to the facts and still argue self-defense," and (3) Smith had not, and "quite frankly neither [had Lawson], expect[ed] the [police] officers to ask for the maximum sentence in the PSI upon a plea." The trial court overruled the motion, and following the defense's presentation of its case in mitigation, the court sentenced Smith to an aggregate prison term of 85 years.
 {¶ 8} Smith, pro se, timely filed a notice of appeal. He attached to the notice of appeal a handwritten statement insisting on his innocence and complaining about Lawson's representation at trial and his failure to file, as promised, a notice of appeal in the case. *Page 4 
 {¶ 9} Two weeks later, Lawson filed on Smith's behalf a motion asking the court to "set aside" Smith's no-contest pleas "and to grant him a new trial" on the ground that Smith had not waived his right to a jury trial in conformity with R.C. 2945.05. That motion remains pending.
 {¶ 10} A week after filing the motion to "set aside" the pleas, Lawson filed, out of time, a notice of appeal. We dismissed this second appeal as superfluous.[1]
 {¶ 11} Two months later, Lawson filed with the trial court a motion asking the court to "continue" what we can only presume to be the proceedings on his motion to "set aside" Smith's pleas, "[d]ue to medical and surgical reasons" requiring Lawson to be hospitalized for a month. Smith thereafter retained new counsel to represent him in his direct appeal and to file his postconviction petition.
 II. Postconviction Proceedings {¶ 12} In his direct appeal, Smith challenged the knowing and voluntary nature of his no-contest pleas, the overruling of his oral motion to withdraw his pleas, various aspects of his sentences, and his trial counsel's effectiveness. We affirmed his convictions in part, but remanded the case in part for resentencing consistent with R.C. 2941.25
and the Ohio Supreme Court's intervening decision in State v.Cabrales[2] and for correction of the judgment of conviction.[3]
 {¶ 13} In his postconviction petition, Smith contended that he had been denied his constitutionally secured right to the effective assistance of trial counsel. He asserted that Lawson had been derelict in his duties to communicate with him concerning his case, to adequately investigate the charges, and to prepare for trial. Smith further charged that Lawson had "false[ly] represented]" that he had *Page 5 
negotiated a plea agreement for a ten-year sentence, and that Lawson had overcome Smith's "reluctan[ce]" and had "motivated [him] to accept [the ten-year deal] by alleging that [Smith's] grandmother and great aunt supported [it]."
 {¶ 14} In support of his petition, Smith offered his own and his grandmother's affidavits. In his affidavit, Smith averred that although his family had retained Lawson on February 1, 2006, he and Lawson had not met until more than nine months later, on the date set for trial. Lawson, Smith asserted, had arrived at the holding cell well after the time set for trial, had "appeared disheveled, * * * [had] had a bad odor[, and had] * * * appeared to be sleepy. His eyes were red, and his lips were dry and white."
 {¶ 15} Smith related to Lawson the facts of his case and "tried to explain" to Lawson that he had acted in self-defense, that he was not guilty of the charges in the indictment, that he wanted a jury trial, and that he "would not admit to something that [he] did not do." Lawson told Smith that he had already negotiated a plea bargain under which Smith would enter no-contest pleas to all charges and specifications in exchange for a ten-year sentence. Lawson stated "that he would present [Smith's] defense of self-defense," and that he "would make arguments based on the facts or absence of facts," with the result that the trial court would acquit Smith of some of the offenses charged in the indictment.
 {¶ 16} Smith asked Lawson why he should admit to something that he had not done. Lawson again assured Smith that he would be sentenced to ten years. And Lawson asserted that he had discussed the plea bargain with Smith's grandmother and great aunt that morning, and that they had told Lawson to tell Smith to "`take the ten years."' These representations, Smith insisted, had prompted his pleas. *Page 6 
 {¶ 17} Smith and Lawson met once more, on the day of sentencing. Lawson again assured Smith that "`the deal [was] for ten years,'" and that "everything was going to work out as he had previously discussed." But Smith told Lawson that his grandmother had denied recommending the plea bargain, and that he "had lost confidence in [Lawson] and no longer believed his representations." Smith thus directed Lawson to move before sentencing to withdraw his pleas and to proceed to trial.
 {¶ 18} In her affidavit, Smith's grandmother averred that she had spoken often with Smith during the nine months he awaited trial, and that, from their conversations, she "knew [Smith had] intended to proceed to trial." As she waited for Lawson outside the courtroom on the day of trial, she was concerned that Smith and Lawson had not yet met. When she spoke with Lawson about her concerns, she "noticed unusual movements in his hands and in his arms." She again spoke with Lawson after he and Smith had met. She was confused by Lawson's explanation of the plea procedure and by Lawson's statement that Smith had agreed to enter no-contest pleas, because Smith had consistently maintained that he "wanted a trial," and she believed that he "should not say he did something that he did not do." After the plea hearing, Lawson advised Smith's grandmother that he would "`immediately file an appeal'" and would contact her later. She never heard from him again.
 {¶ 19} The common pleas court declined to hold a hearing on Smith's postconviction petition upon its determination that Smith's claims were "only supported by broad assertions of prejudice and general conclusory allegations." And the court denied the petition upon its finding that Smith's claims were "rebut[ted]" by Smith's acknowledgments during the Crim. R. 11 colloquy at his plea hearing "that *Page 7 
he was facing a maximum prison sentence of 105 and ½ years and that no promises were made to him that he would receive a specific sentence." This appeal followed.
 III. The Court Erred in Denying a Hearing {¶ 20} In the sole assignment of error advanced in his appeal, Smith contends that the common pleas court erred in denying his postconviction petition without an evidentiary hearing. We agree.
 {¶ 21} To prevail on a postconviction claim, the petitioner must demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that rendered the conviction void or voidable under the Ohio Constitution or the United States Constitution.[4] The petitioner bears the initial burden of demonstrating, through the petition, its supporting affidavits, and the record of the case, "substantive grounds for relief"[5]
 {¶ 22} A postconviction claim is subject to dismissal without a hearing if the petitioner has failed to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief.[6] Conversely, "the court must proceed to a prompt hearing on the issues" if "the petition and the files and records of the case show the petitioner is * * * entitled to relief."[7]
 {¶ 23} In his postconviction petition, Smith sought relief from his
convictions on the ground that his no-contest pleas were the involuntary and unintelligent product of his trial counsel's ineffectiveness. Federal and state due-process considerations require that a plea "represent a voluntary and intelligent *Page 8 
choice among the alternative courses of action open to a defendant."[8] To prevail on a claim that his no-contest plea was the involuntary or unintelligent product of his counsel's ineffectiveness, a postconviction petitioner must demonstrate "first, * * * that counsel's performance was deficient,"[9] and, second, "that there is a reasonable probability that, but for counsel's [deficient performance, the petitioner] would not have pleaded [no contest] and would have insisted on going to trial."[10]
 {¶ 24} The common pleas court found that the record of the proceedings below "rebut[ted]" Smith's claims that he had entered his no-contest pleas in reliance upon Lawson's false representations that Smith would be sentenced to a prison term of only ten years, and that Smith's grandmother and great aunt wanted him to plead. In his Crim. R. 11 colloquy with the trial court, Smith acknowledged his understanding that he "face[d]" a "maximum penalty [of] * * * a hundred and five and a half years." And he responded in the negative to the court's question, "Were you promised anything or threatened in any way to make you change your plea from not guilty to no contest?"
 {¶ 25} But the record also supports Smith's postconviction claims. The transcript of the hearing on the oral motion to withdraw his pleas confirmed Smith's assertions that Lawson had led him to believe that, at the plea hearing, he could dispute the facts alleged in the indictment, present his self-defense claim, and expect to be acquitted of some of the offenses charged in the indictment. The record also supports Smith's assertion that he and Lawson had expected a significantly reduced prison term. *Page 9 
 {¶ 26} Also during that hearing on the motion to withdraw the pleas, Lawson offered Smith's version of the events giving rise to the charges against him. And Lawson stated that Smith's version "d[id] kind of conform to what the police officer said, or at least to what somebody * * * said" in the report of the presentence investigation that Lawson had first read that morning. Thus, Lawson's statements bolstered Smith's assertion that he had not recently fabricated either his dispute over the facts alleged in the indictment or his claim that he had acted in self-defense. And the statements showed that Lawson had been, until that morning, unaware of possibly exculpatory evidence. Thus, the record bolstered Smith's claim that Lawson had neither communicated with Smith nor adequately investigated or prepared his case before advising him to plead.
 {¶ 27} Finally, the record did not, with any specificity, touch upon Smith's claim, supported by his and his grandmother's affidavits, that Lawson had overridden his determination to go to trial by falsely representing that his grandmother and great aunt had urged him to plead.
 {¶ 28} We thus conclude that Smith submitted with his postconviction petition evidentiary material setting forth sufficient operative facts to demonstrate that his no-contest pleas were the involuntary and unintelligent product of his trial counsel's ineffectiveness.[11] We, therefore, hold that the common pleas court erred when it denied his petition without an evidentiary hearing. Accordingly, we sustain the sole assignment of error, reverse the judgment entered below, and remand this case for further proceedings consistent with the law and this decision.
 Judgment reversed and cause remanded. *Page 10 
 HENDON, P.J., CUNNINGHAM and WINKLER, JJ.
RALPH WINKLER, retired, of the First Appellate District, sitting by assignment.
[1] See State v. Smith (Jan. 12, 2007), 1st Dist. No. C-061035.
[2] 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181.
[3] See State v. Smith, 1st Dist. No. C-060991, 2008-Ohio-2561.
[4] See R.C. 2953.21(A)(1).
[5] See R.C. 2953.21(C).
[6] See id.; State v. Pankey (1981), 68 Ohio St.2d 58, 428 N.E.2d 413;State v. Jackson (1980), 64 Ohio St.2d 107, 413 N.E.2d 819.
[7] R.C. 2953.21(E).
[8] North Carolina v. Alford (1970), 400 U.S. 25, 31, 91 S.Ct. 160; accord State v. Engle (1996), 74 Ohio St.3d 525, 527,660 N.E.2d 450.
[9] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052.
[10] Hill v. Lockhart (1985), 474 U.S. 52, 59, 106 S.Ct. 366, 369; seeState v. Xie (1992), 62 Ohio St. 3d 521, 524, 584 N.E.2d 715.
[11] See R.C. 2953.21(E). *Page 1