[Cite as *State v. Smith*, 2019-Ohio-3642.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180081 |
| | | TRIAL NO. B-0600007 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| CHRISTOPHER SMITH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  September 11, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Ohio Justice & Policy Center* and *David A. Singleton*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}   Defendant-appellant Christopher Smith appeals the Hamilton County Common Pleas Court's judgment overruling his Crim.R. 32.1 motion to withdraw his no-contest pleas.  We reverse that judgment upon our determination that the court abused its discretion in overruling the motion without first conducting an evidentiary hearing.

*Procedural Posture*

{¶2}   Smith was indicted in January 2006 on two counts of attempted murder, three counts of felonious assault, two counts of aggravated robbery, two counts of robbery, and single counts of carrying a concealed weapon and having weapons under a disability.  Those charges arose in connection with two armed robberies followed by an encounter with two Cincinnati police detectives during which Smith shot at the officers, striking one officer in the knee.

{¶3}   In February 2006, Smith retained attorney Kenneth L. Lawson.  Lawson filed discovery requests and secured a series of continuances until October 17, 2006, when Smith entered no-contest pleas to all counts.

{¶4}   *Plea and sentencing proceedings.*  At the plea hearing, the trial court advised Smith, and he acknowledged his understanding, that he faced prison terms totaling a minimum of 13 years and up to 105½ years.  And he denied that his pleas had been prompted by threats or promises.  The court accepted the pleas and found Smith guilty as charged upon his admission, by his no-contest pleas, of the truth of the facts alleged in the indictment, *see* Crim.R. 11(B)(2), along with the following recitation of facts:  Smith separately approached two men and, in each instance, demanded money, while indicating that he had a gun concealed in his clothing.  The first man surrendered money and his cell phone; the second man ran

into the street and yelled that he was being robbed, and Smith fled. Smith was then observed by two Cincinnati plainclothes homicide detectives following a young woman and "acting peculiar." The detectives approached Smith and identified themselves as police officers. Smith pulled a gun from his waistband and fired multiple shots at the officers, striking one in the knee. Smith then fled and was later found hiding under a truck, with a handgun in his possession. *See State v. Smith*, 1st Dist. Hamilton No. C-060991, 2008-Ohio-2561, ¶ 1-2, *appeal not allowed*, 120 Ohio St.3d 1416, 2008-Ohio-6166, 897 N.E.2d 652.

{¶5} In its presentence memorandum, the state "urge[d] the Court to impos[e] either the maximum sentence permitted by law and/or a substantial sentence involving 'high-end' consecutive sentences * * * ." Lawson submitted nothing on Smith's behalf.

{¶6} At the sentencing hearing, following review of the presentence-investigation report, Lawson, at Smith's request, orally moved to withdraw his no-contest pleas, stating the following the reasons for withdrawal: (1) Smith "believe[d] that he should not have been convicted of all charges on a no-contest plea * * * because there was only one shot fired"; (2) Smith had previously discussed with Lawson his belief that he had acted in self-defense and had, when he entered his pleas, "believe[d] that he c[ould] admit to the facts and still argue self-defense"; and (3) Smith had not, and "quite frankly neither [had Lawson], expect[ed] the [police] officers to ask for the maximum sentence in the PSI upon a plea." The trial court overruled the motion and, following the defense's presentation of its case in mitigation, sentenced Smith to consecutive prison terms totaling 85 years.

{¶7} *Direct appeal.* In subsequent challenges to his convictions, Smith asserted his innocence and challenged Lawson's effectiveness. Smith filed pro se a

timely notice of appeal. Attached to his notice of appeal was a handwritten statement complaining about Lawson's representation and failure to file, as promised, a notice of appeal in the case. According to Smith, Lawson did not communicate or meet with him until the date set for trial. Lawson asked Smith to plead guilty, and Smith initially declined, but ultimately agreed to plead no-contest after Lawson promised him and his family sentences totaling "ten years for [his] whole case." Smith arrived at the sentencing hearing expecting a ten-year sentence and followed Lawson's prehearing instructions to "say yes to everything [the trial judge] asked." After sentencing, Lawson promised to file an appeal. Thereafter, Lawson neither communicated with Smith nor followed through with his promise to appeal.

{¶8}  Two weeks after Smith filed his pro se notice of appeal, Lawson filed a motion to "set aside" Smith's no-contest pleas "and to grant him a new trial," on the ground that he had not waived his right to a jury trial in conformity with R.C. 2945.05. *See Smith*, 1st Dist. Hamilton No. C-060991, 2008-Ohio-2561, at ¶ 31-33 (deciding the jury-waiver issue in the direct appeal). A week later, Lawson filed an untimely notice of appeal. We dismissed that appeal as superfluous to Smith's pro se appeal. *See State v. Smith*, 1st Dist. Hamilton No. C-061035 (Jan. 12, 2007).

{¶9}  Two months later, Lawson filed with the trial court a motion asking the court to "continue" the proceedings on his motion to "set aside" Smith's pleas, "[d]ue to medical and surgical reasons" requiring Lawson to be hospitalized for a month. Smith thereafter retained new counsel to represent him in his direct appeal and to file an R.C. 2953.21 petition for postconviction relief.

{¶10} In the direct appeal, we held that the trial court did not abuse its discretion in overruling the oral presentence motion to withdraw Smith's no-contest

pleas. And we held that the record did not demonstrate Lawson's alleged ineffectiveness in preparing Smith's case and in persuading him to plead no-contest to all charges in the indictment, with a false promise of a ten-year agreed sentence and despite the state's recommendation of high-end sentences. But we remanded for the merger of several counts consistent with R.C. 2941.25. *See Smith*, 1st Dist. Hamilton No. C-060991, 2008-Ohio-2561, at ¶ 12-14, 20-30, 34-35.

{¶11} Following resentencing, Smith stood convicted of two counts of attempted murder, two counts of felonious assault, and single counts of aggravated robbery, robbery, carrying a concealed weapon, and having weapons under a disability. His prison terms for those offenses totaled 64 years.

{¶12} *Postconviction petition.* In 2007, newly retained counsel timely filed a postconviction petition. In his petition, Smith again challenged Lawson's effectiveness. Smith asserted that Lawson had violated his duties to communicate with him and to adequately investigate and prepare his case. And he asserted that he had been persuaded to plead no-contest by Lawson's false representations that the state had made a plea offer that included an agreed ten-year prison sentence and that his family supported his acceptance of that offer.

{¶13} In support of his postconviction challenges to Lawson's effectiveness, Smith offered his own affidavit and that of his grandmother. According to Smith, he first met Lawson on the date set for trial, nine months after Lawson had been retained by Smith's family. Lawson arrived at the holding cell well after the time set for trial, "appeared disheveled, * * * had a bad odor," and "appeared to be sleepy. His eyes were red, and his lips were dry and white." Smith related to Lawson the facts of his case and asserted that he had acted in self-defense, that he wanted a jury trial, and that he "would not admit to something that [he] did not do." Lawson

responded that he had already negotiated a plea agreement under which Smith would enter no-contest pleas to all charges and specifications in exchange for a ten-year sentence. Lawson told Smith that he could still present a defense and argue the facts, and that the trial court would acquit him of some of the offenses charged in the indictment. After Lawson had assured him that his grandmother and great aunt had, that morning, told Lawson to tell Smith to "take the ten years," Smith agreed to plead. But before sentencing, Smith learned from his grandmother that she did not support the plea agreement. Thus, on the day of sentencing, Smith dismissed Lawson's assurances that "the deal [was] for ten years" and that "everything was going to work out as he had previously discussed." And he directed Lawson to move before sentencing to withdraw his pleas.

{¶14} Smith's grandmother averred in her affidavit that she had spoken often with Smith during the nine months he awaited trial, and that from their conversations, she knew Smith had intended to proceed to trial. Outside the courtroom on the day of trial, she expressed to Lawson her concern that he and Smith had not yet met. She "noticed unusual movements in [Lawson's] hands and in his arms." Smith had consistently maintained that he "wanted a trial," and she believed that he "should not say he did something that he did not do." Thus, when she spoke to Lawson after he had met with Smith, she was confused by Lawson's explanation of the plea procedure and by his statement that Smith had agreed to enter no-contest pleas. After the plea hearing, Lawson advised her that he would "immediately file an appeal" and would contact her later. She never heard from him again.

{¶15} The common pleas court denied Smith's postconviction petition without an evidentiary hearing, upon its determination that the record of the

proceedings at the plea hearing disproved Smith's claim that he had entered his no-contest pleas in reliance upon Lawson's false representations concerning the ten-year plea agreement and his family's support for the agreement. On appeal, we found that the record also supported Smith's claim, and we reversed and remanded for an evidentiary hearing on the petition. *State v. Smith*, 1st Dist. Hamilton No. C-070624, 2008-Ohio-3789.

{¶16} The common pleas court, on remand, entered judgment denying the petition and setting forth findings of fact and conclusions of law. Those findings of fact and conclusions of law were based on matters adduced at a November 2008 evidentiary hearing and a January 2009 proceeding during which "the parties entered certain stipulations for the purpose of consideration on the merits of the [postconviction] claims."

{¶17} We note that certified transcripts of the proceedings during Smith's 2006 plea and sentencing hearings were made a part of the record, when they were filed in his 2007 direct appeal. But despite his compliance with the requirements of App.R. 9(B), certified transcripts of the proceedings during the 2008 and 2009 hearings on his postconviction petition were not made a part of the record in his appeal from the denial of postconviction relief.[1] Nor were certified hearing transcripts made a part of the record in any subsequent proceeding. Because the certified hearing transcripts were not a part of the record before the common pleas court in deciding the new-trial motion from which this appeal derives, they are not a

---

[1] In that appeal, Smith indicated in the docket statement that a complete transcript of the proceedings would be filed, and he timely filed (along with a motion for appointed counsel) a praecipe and a motion asking the court to direct the court reporter to prepare and file a complete transcript. *See* App.R. 9(B) and 10(A). Nevertheless, certified transcripts of those proceedings were never filed. And that deficiency in the record went unremarked, when that appeal was dismissed for failure to timely file the appellant's brief. *See State v. Smith*, 1st Dist. Hamilton No. C-090215 (Sept. 29, 2009).

part of the record in this appeal. *See State v. Ishmail*, 54 Ohio St.2d 402, 405-406, 377 N.E.2d 500 (1978), paragraph two of the syllabus.

{¶18} But the record in this appeal does include findings of fact and conclusions of law made by the common pleas court in denying postconviction relief. Based in part upon the matters adduced at those hearings, including the "stipulations" made by Lawson, the court found that the record and outside evidence did not demonstrate that Lawson had been constitutionally ineffective in investigating and preparing his case, in representing him while impaired by drugs, or in persuading him to plead no-contest with the false statements that the plea offer was for ten years and was supported by his family and that he could still argue self-defense and gain acquittal on some of the charges.

{¶19} With respect to the alleged deficiencies in Lawson's pretrial preparations, the court noted that, although Lawson had admitted in his stipulations that he "couldn't remember specific dates and times when he met with [Smith], he did specifically remember having several prior personal contacts with [him] wherein they reviewed [his] case." And the court noted that the record shows that Lawson had filed discovery requests and had appeared in court on Smith's behalf seven times, that Smith had acknowledged at his plea hearing his satisfaction with Lawson's representation, and that Smith had expressed no dissatisfaction until the handwritten statement submitted with his pro se notice of appeal in the direct appeal.

{¶20} Lawson's "drug problem," the court noted, was made public in April 2007, and Smith and his grandmother first complained of Lawson's "alleged 'impairment' " in their April and May 2007 affidavits offered in support of Smith's 2007 postconviction petition. That allegation, the court determined, was not

corroborated in the record or by other outside evidence. And Lawson in his stipulations, while admitting to drug abuse from 2000 or 2001 to February 2007, insisted that his drug use had neither affected his physical appearance nor "necessarily affect[ed] his ability to function," and that using drugs in the morning had "permitted" him to function in court.

{¶21} Concerning the alleged ten-year agreed sentence, the court noted that Lawson had denied in his stipulations telling Smith or his family that the plea offer was for an agreed sentence. And, the court noted, the record shows that, at the plea hearing, Smith acknowledged his understanding that he faced aggregate prison terms of 13 years minimum and up to 105½ years, denied that his pleas were prompted by threats or promises, and did not then inform the court of a ten-year agreed sentence. Also, Smith did not seek to withdraw his pleas until the day of sentencing, after he had learned from the presentence-investigation report that the victims wanted maximum sentences. And at sentencing, neither Lawson nor Smith mentioned an agreed ten-year term when Lawson raised with the court his concerns about the maximum-sentence request.

{¶22} The court further noted that Lawson had denied in his stipulations that he had misinformed Smith that he could plead no-contest and still argue self-defense. To the contrary, Lawson insisted, he told Smith that he could assert "self-defense" in mitigation of sentence, but that he could not establish the affirmative defense of self-defense at a trial, because he could not demonstrate that he had not been at fault in creating the circumstances giving rise to his use of a gun, and because he had possessed the gun while under a disability. The court noted that during the Crim.R. 11 colloquy, Smith had acknowledged his waiver of his rights to a jury trial, to confront witnesses, and to challenge the evidence against him, and that the record

did not show that he had been misled or tricked into relinquishing his these rights. And the court concluded that Smith's no-contest pleas had been accepted in full conformity with Crim.R. 11.

{¶23} Smith appealed from the denial of his 2007 postconviction petition, but the appeal was dismissed because he failed to timely file his appellate brief. *See State v. Smith*, 1st Dist. Hamilton No. C-090215 (Sept. 29, 2009). Thereafter, he unsuccessfully challenged his convictions in postconviction motions filed in 2013 and 2015. *See State v. Smith*, 1st Dist. Hamilton No. C-140421 (May 1, 2015) (affirming the overruling of his 2013 Civ.R. 60(B) motion to merge allied offenses).

{¶24} *Motion for a new trial.* In 2017, Smith filed with the common pleas court a Crim.R. 33 "Motion for Leave to File a Motion for New Trial," along with a proposed new-trial motion, seeking a "new trial" based on newly discovered evidence of Lawson's ineffectiveness due to drug addiction, including documents concerning his felony conviction and the grievance and disciplinary proceedings against him. We affirmed the overruling of that motion, upon our determination that the common pleas court had no jurisdiction to entertain the motion. *State v. Smith*, 1st Dist. Hamilton No. C-170431 (Aug. 28, 2018).

### Motion to Withdraw No-Contest Pleas

{¶25} In 2017, Smith also filed the Crim.R. 32.1 motion to withdraw his no-contest pleas from which this appeal derives. Smith alleged that his no-contest pleas had been the unknowing, involuntary, and unintelligent product of Lawson's ineffectiveness, when (1) Smith "never elected to waive his right to a jury trial," (2) he could not have been convicted of having weapons under a disability based on his juvenile-delinquency adjudication, and (3) Lawson, due to his drug abuse, was "[not] in his right mind" and was incapable of "making sound decisions for and with

10

[Smith]." The motion was supported with affidavits made by Smith and Lawson in 2017.

{¶26} In his affidavit, Smith averred that his family had retained Lawson in February 2006, and that his dissatisfaction with Lawson had begun when Lawson did not visit him in jail or respond to his letters, conveyed through his grandmother, concerning matters relevant to the investigation and preparation of his case. When Smith voiced his dissatisfaction to his family, his grandmother "advised" him to stick with Lawson because the family could not get back what they had paid for Lawson's representation.

{¶27} Smith averred that he had no communication with Lawson until October 17, 2006, when Lawson met with him in a holding cell at the courthouse. Smith presented Lawson with proposed "exhibits to put forth a defense [at] trial," containing some of the information that Smith had attempted to convey to Lawson through his grandmother. But Lawson said that he had just spoken with the judge and the assistant prosecuting attorney, that "he had reached a plea deal of ten[] years in exchange for [a] plea of no-contest," and that "some of the charges would be dismissed." According to Smith, Lawson's "actions and demeanor [were] all rushed," and he was anxious to return to the courtroom to prepare the plea forms, giving Smith little time to consider whether to accept the plea offer. Smith showed Lawson photographs of his children and told Lawson that he wanted a trial, that he did not want to admit to crimes he had not committed, and that his children needed him at home. Lawson said, "[T]hese people upstairs don't care if you did this or not, right now they have someone to blame this on and that person is you." Smith's grandmother and great aunt, Lawson insisted, asked him to convey to Smith their desire that he "take the deal, [because] they [would rather] see [him] with 10 years

11

than 100½ years." And Lawson added, "[Y]ou are still young, you have a whole life ahead of you, you can take this 10 years go up the road get your education and you will be 31 years old when you get out."

{¶28} Smith further averred that at the plea hearing, Lawson had "advised [him] to say yes to whatever the judge ask[ed] [him] or the judge was going to force him to go to trial that same day." Smith did as he was told, because he feared that Lawson was not prepared to go to trial, and because his grandmother had, from the beginning, instructed him to do what Lawson told him to do. Otherwise, Smith asserted, he would have insisted on going to trial.

{¶29} In his affidavit, Lawson essentially recanted his 2007 "stipulations" as characterized by the common pleas court in denying postconviction relief. He averred that because he was "heavily addicted" to opiates when representing Smith, he "could not be effective as counsel." Lawson's sobriety date was February 2, 2007, and he averred that the final year of his addiction had been "almost a complete blur": he had a $1,000 per day habit, and if he went more than three hours without pills, he would get "dope sick." Lawson stated that he "[did not] doubt" Smith's statements concerning "promises" that Lawson had made or Smith's "description" of what Lawson had done and said, because "[m]ore than likely, [he] didn't want to sit in court getting dope sick," and he "would say anything to anyone [to] continue to feed [his] addiction." Lawson also stated his willingness to testify concerning his addiction and his "recollection of what happened in [the] case."

### *Assignments of Error*

{¶30} In this appeal from the overruling of his Crim.R. 32.1 motion, Smith advances two assignments of error. In his first assignment of error, he contends that the common pleas court abused its discretion in overruling his motion to withdraw

his no-contest pleas without first conducting an evidentiary hearing. His second assignment of error essentially challenges the denial of relief from his weapons-under-disability conviction based on his claim concerning the use of his juvenile-delinquency adjudication to prove that offense. The first assignment of error is well taken in part.

{¶31} *Jurisdiction to entertain the Crim.R. 32.1 motion.* We note, as a preliminary matter, that the ineffective-counsel claim presented in Smith's Crim.R. 32.1 motion to withdraw his no-contest pleas depended for its resolution upon evidence outside the record of the proceedings leading to his convictions. Thus, despite our affirmance in the direct appeal of the convictions based on those pleas, the common pleas court had jurisdiction to entertain the motion. *See State v. West*, 1st Dist. Hamilton No. C-150587, 2017-Ohio-5596, ¶ 6-22, following *State v. Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516, and distinguishing *Special Prosecutors v. Judges*, 55 Ohio St.2d 94, 97, 378 N.E.2d 162 (1978).

{¶32} *Standard of review.* On a postsentence Crim.R. 32.1 motion to withdraw a guilty or no-contest plea, the movant bears the burden of demonstrating that withdrawing the plea was necessary "to correct manifest injustice." Crim.R. 32.1; *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. The decision to overrule the motion is committed to the sound discretion of the trial court and may not be disturbed on appeal unless the court abused that discretion. *See Smith* at paragraph two of the syllabus.

{¶33} The United States and Ohio Constitutions confer upon a criminal accused the right to the effective assistance of counsel and the right to have one's guilt of charged offenses determined at a trial. *See* United States Constitution, Article III, Section 2; the Sixth Amendment to the United States Constitution; Ohio

Constitution, Article I, Section 10. For purposes of the Sixth Amendment right to the effective assistance of counsel, a plea negotiation is a critical phase of a criminal prosecution. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In support of his claims that his no-contest pleas had been the involuntary, unknowing, and unintelligent product of Lawson's ineffectiveness, Smith bore the burden of demonstrating that Lawson's performance was deficient in the sense that he "was not functioning as the 'counsel' guaranteed * * * by the Sixth Amendment," *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that there was a reasonable probability that, but for the deficiencies in Lawson's performance, Smith would not have pled no-contest, but would have insisted on going to trial. *Hill* at 59; *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992).

{¶34} Crim.R. 32.1 does not expressly require a court to hold a hearing on a postsentence motion to withdraw a guilty or no-contest plea. But this court has effectively adopted a rule that requires a hearing if the facts alleged in the motion, and accepted as true by the court, would require that the plea be withdrawn. The decision whether to hold a hearing is discretionary and may be reversed on appeal only if the court abused its discretion. *State v. Brown*, 1st Dist. Hamilton No. C-010755, 2002-Ohio-5813; *accord West*, 1st Dist. Hamilton No. C-150587, 2017-Ohio-5596, at ¶ 37.

{¶35} The nature of that hearing is also discretionary with the court. *See West* at ¶ 40; *State v. Mynatt*, 1st Dist. Hamilton Nos. C-100298 and C-100319, 2011-Ohio-1358, ¶ 19 and 23. The court need not conduct a full evidentiary hearing, when the record reveals that the allegations of the new-trial motion are meritless. *State v. Norton*, 1st Dist. Hamilton Nos. C-840415 and C-840896, 1985 WL 8950, *3

(July 24, 1985). The court may also decide the motion in a "paper hearing," if the affidavit testimony upon which the motion depends is deemed by the court to lack credibility, upon consideration of

> all relevant factors, including (1) whether the judge reviewing the motion also presided at the plea hearing, (2) whether multiple affidavits contain nearly identical language or otherwise appear to have been drafted by the same person, (3) whether the affidavit contains or relies on hearsay, (4) whether the affiant is related to the defendant or otherwise interested in the success of his efforts, (5) whether the affidavit contradicts defense evidence, (6) whether the affidavit is contradicted by any other sworn statement of the affiant, and (7) whether the affidavit is internally inconsistent.

*West* at ¶ 38. *See Mynatt* at ¶ 18-20 (adopting for purposes of a Crim.R. 32.1 motion the factors set forth in *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), for assessing affidavits submitted in support of a postconviction petition). Thus, when a Crim.R. 32.1 motion, on its face, demonstrates substantive grounds for relief, the record does not wholly negate the allegations of the motion, and the credibility of the averments of the supporting affidavits cannot be wholly discounted, the defendant is entitled to an evidentiary hearing on the motion.

{¶36} ***An evidentiary hearing was required.*** We hold that the common pleas court did not abuse its discretion in failing to conduct a hearing on Smith's claims in his Crim.R. 32.1 motion challenging Lawson's effectiveness concerning the jury waiver or the sufficiency of the evidence to support his weapons-under-disability conviction. An assignment of error challenging the validity of Smith's jury waiver was overruled in his direct appeal. *Smith*, 1st Dist. Hamilton No.

C-060991, 2008-Ohio-2561, at ¶ 31-33. And using his prior juvenile adjudication to prove his R.C. 2923.13(A)(2) weapons-under-disability offense did not violate the due-process guarantees of the state or federal constitution. *See State v. Carnes*, 154 Ohio St.3d 527, 2018-Ohio-3256, 116 N.E.3d 138, ¶ 21. Thus, Smith did not sustain his burden of demonstrating those alleged deficiencies in Lawson's performance.

{¶37} But we hold that the common pleas court abused its discretion in declining to conduct an evidentiary hearing on the motion's remaining claim, that Lawson's drug addiction had rendered him incapable of functioning as the counsel guaranteed under the Sixth Amendment, and that but for the resultant deficiencies in Lawson's performance, Smith would have insisted on going to trial. The motion, on its face, as supported by the 2017 affidavits of Smith and Lawson, demonstrated substantive grounds for relief.

{¶38} The claim is not wholly disproved by the record. As we noted in our decision remanding for an evidentiary hearing on Smith's 2007 postconviction petition, the record provided support for Smith's allegations that Lawson had led Smith to believe that, at the plea hearing, he could dispute the facts alleged in the indictment, present his self-defense claim, and expect to be acquitted of some of the offenses charged in the indictment. The record also bolstered Smith's assertions that he had not recently fabricated either his dispute over the facts alleged in the indictment or his claim that he had acted in self-defense, and that Lawson had neither communicated with Smith nor adequately investigated or prepared his case before advising him to plead. And the record did not disprove Smith's assertion that Lawson had overridden his determination to go to trial by falsely representing that his grandmother and great aunt supported the pleas. *See Smith*, 1st Dist. Hamilton No. C-070624, 2008-Ohio-3789, at ¶ 24-28.

{¶39} Nor could the common pleas court have wholly discounted the credibility of Smith's and Lawson's affidavits. With reference to the *Calhoun* factors, we note that the judge who reviewed Smith's Crim.R. 32.1 motion had not presided at his plea hearing. Smith's and Lawson's affidavits were internally consistent and did not use identical language or otherwise suggest that they were drafted by the same person. Both Smith and Lawson must be said to have had an interest in the success of Smith's motion to withdraw his pleas, Smith in vindicating his constitutional rights to the effective assistance of counsel and a jury trial, and Lawson in remedying what he perceived as an injustice. Finally, Smith's affidavit was based on first-hand knowledge and was consistent with the handwritten document accompanying his notice of appeal in the direct appeal and with the affidavit that he submitted in support of his postconviction petition. Lawson's affidavit was expressly not based on first-hand knowledge of his conduct in counseling Smith's pleas, but was based on first-hand knowledge of his capabilities at the time. And Lawson's admission that he could not recall what he had done, along with his description of the final year of his addiction, may fairly be read to support Smith's contention in his motion that Lawson's drug abuse had rendered him incapable of "making sound decisions for and with [Smith]."

{¶40} Smith was entitled to an evidentiary hearing on his Crim.R. 32.1 motion when facts alleged in the motion, and accepted by the common pleas court as true, would require that he be allowed to withdraw his no-contest pleas. We, therefore, hold that the court abused its discretion when it overruled the motion without an evidentiary hearing.

## *We Reverse*

{¶41} In light of the Ohio Supreme Court's decision in *Carnes*, 154 Ohio St.3d 527, 2018-Ohio-3256, 116 N.E.3d 138, Smith cannot be said to have demonstrated the deficiency in Lawson's performance alleged in his Crim.R. 32.1 motion concerning the use of his prior juvenile adjudication to prove his weapons-under-disability offense. We, therefore, overrule the second assignment of error.

{¶42} But the court abused its discretion when it overruled the motion without first conducting an evidentiary hearing on Smith's claim that Lawson's drug addiction had rendered him incapable of functioning as the counsel guaranteed under the Sixth Amendment. Accordingly, we sustain the first assignment of error, reverse the judgment entered below, and remand this cause for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

CROUSE and WINKLER, JJ., concur

Please note:

The court has recorded its own entry on the date of the release of this opinion.