# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. | C-250130 |
| | | | C-250131 |
| Plaintiff-Appellee, | : | TRIAL NO. | B-0304786 |
| vs. | : | | |
| MARCUS HARDEN, | : | *JUDGMENT ENTRY* | |
| Defendant-Appellant. | : | | |

This cause was heard upon the appeals, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgments of the trial court are affirmed as modified.

Further, the court holds that there were reasonable grounds for these appeals, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 11/21/2025 per order of the court.**

**By:**_____
    **Administrative Judge**

[Cite as *State v. Harden*, 2025-Ohio-5255.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                    :        APPEAL NOS.   C-250130
                                                         C-250131
    Plaintiff-Appellee,       :        TRIAL NO.     B-0304786

  vs.                             :

MARCUS HARDEN,                    :

    Defendant-Appellant.      :        *O P I N I O N*


Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed as modified

Date of Judgment Entry on Appeal: November 21, 2025


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Verjine V. Adanalian,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Marcus Harden*, pro se.

**Bock, Judge.**

{¶1} Defendant-appellant Marcus Harden challenges the trial court's judgments, which denied his two petitions for postconviction relief from his 2004 conviction for child endangerment. In five assignments of error, Harden maintains that the trial court should have granted his petitions or held an evidentiary hearing on his claims that his trial attorney's misrepresentation of his ability to expunge his conviction induced Harden to plead guilty.

{¶2} We lack authority to reach the merits of Harden's claims because the trial court lacked jurisdiction to consider Harden's untimely petitions. Harden was convicted by guilty plea and cannot satisfy R.C. 2953.23(A)(2)'s jurisdictional requirement of demonstrating that, "but for the constitutional error at trial, no reasonable factfinder" would have convicted Harden.

{¶3} Therefore, we modify the trial court's judgments to dismissals and affirm the trial court's judgments as modified.

## I. Factual and Procedural History

### A. Harden's attorney's misconduct

{¶4} In 2004, Harden hired attorney Kenneth Lawson to defend him against felonious-assault and child-endangerment charges. According to Harden, he relied on Lawson's legal advice in which Lawson represented to Harden that his conviction would be eligible for expungement. Harden then pleaded guilty to one count of child endangerment, a second-degree felony. The trial court accepted Harden's plea and sentenced him to the agreed five-year term of community control. Harden did not file a direct appeal. In 2009, Harden was discharged from community control.

{¶5} Meanwhile, Lawson received an interim suspension from practicing law in 2007 due to allegations of "numerous violations of the Code of Professional

Responsibility and [the] substantial threat of serious harm [that he poses] to his clients and the public." *Disciplinary Counsel v. Lawson*, 113 Ohio St.3d 1508, 1508 (2007). The claims against Lawson ranged from misappropriating his clients' funds to neglecting, or abandoning, his clients' cases. *See Cincinnati Bar Assn. v. Lawson,* 2008-Ohio-3340, ¶ 66.

**{¶6}** During the disciplinary proceedings, Lawson "admitted himself to a rehabilitation facility after more than seven years of drug abuse." *Id.* at ¶ 5. Indeed, Lawson's substance use had "severely compromised the interests of his clients, the legal system, the legal profession, and the public." *Id.* at ¶ 74. So, in 2008, the Supreme Court of Ohio indefinitely suspended Lawson from practicing law. *See id.*

**{¶7}** Later that year, Lawson pleaded guilty to federal charges of "conspiracy to obtain Schedule II controlled substances by deception . . . between August 2003 and 2007." *Disciplinary Counsel v. Lawson*, 2011-Ohio-4673, ¶ 9. Lawson was using his attorney-client relationship to pressure his client, a physician, into prescribing him narcotics. *Id.* at ¶ 4-9. To avoid detection, Lawson instructed the physician to use Lawson's clients' names for those prescriptions. *Id.* at ¶ 7. After a second disciplinary complaint, in 2011 the Supreme Court of Ohio permanently disbarred Lawson from practicing law due to the extent of Lawson's conspiracy. *Id.* at ¶ 36.

**B.** ***Harden's postconviction petitions***

**{¶8}** In September 2024, Harden petitioned for postconviction relief under R.C. 2953.21, claiming that Lawson had provided constitutionally ineffective assistance of counsel by inducing Harden to plead guilty, not investigating Harden's case, and misrepresenting to Harden that he could have his child-endangerment conviction expunged. In his petition, Harden pointed out that Lawson had admitted,

during a disciplinary hearing, to being under the influence of drugs when he encouraged his clients to accept plea offers from the State in 2004.

{¶9} Harden explained that he was unavoidably prevented from discovering Lawson's misconduct because it "was revealed 4 years after [Harden's] sentencing, by counsel himself in his disciplinary hearing" and Harden was advised in 2009 "to wait three years from being discharged" to request expungement of his conviction. In support of his petition, Harden attached his criminal case docket, Lawson's suspension and disbarment orders, and a letter from Harden's son on behalf of Harden proclaiming Harden's innocence in the child-endangerment matter. Weeks later, Harden moved for summary judgment on his petition.

{¶10} Then in January 2025, Harden filed an amended petition for postconviction relief to emphasize Lawson's efforts to convince Harden to plead guilty. In support, he attached a notarized statement from his wife, the mother of the victim in Harden's child-endangerment case. Harden's wife described Lawson's misrepresentations about the consequences of a conviction for child endangerment, which heavily influenced Harden's decision to plead guilty.

{¶11} In February 2025, the trial court found Harden's petitions "not well taken" and denied the petitions.

## II. Analysis

{¶12} On appeal, Harden challenges the trial court's denial of his postconviction petitions in five assignments of error. First, Harden argues that the trial court should have found that Lawson's constitutionally-deficient legal assistance deprived Harden of his rights under the Sixth Amendment to the United States Constitution. Second, he asserts that the trial court should have held an evidentiary hearing. Third, he maintains that Lawson's extreme and pervasive misconduct

amounted to a complete denial of counsel under *United States v. Cronic,* 466 U.S. 648 (1984). In his fourth and fifth assignments of error, Harden argues that Lawson's deficient pretrial representation violated his constitutional right to trial under *Hill v. Lockhart,* 474 U.S. 52 (1985), and *Lee v. United States*, 682 U.S. 357 (2017).

**{¶13}** Ohio's postconviction-relief statute, R.C. 2953.21, affords a person convicted of a criminal offense an opportunity to mount a "collateral civil attack on the judgment." *State v. Calhoun,* 86 Ohio St.3d 279, 283 (1999). Relief is available under R.C. 2953.21(A)(1)(a) if a petitioner can show "that there was a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or Constitution of the United States." R.C. 2953.21(A)(1)(a)(i).

**{¶14}** Ordinarily, we review the trial court's decision to deny a postconviction petition for an abuse of discretion. *See State v. Hatton,* 2022-Ohio-3991, ¶ 38. However, Harden's postconviction petitions raise a threshold jurisdictional issue that we review de novo. *Id.*

## A. *Jurisdiction under Ohio's postconviction-relief statute*

**{¶15}** Ohio's postconviction statute limits a trial court's jurisdiction to consider untimely postconviction petitions. *See State v. Apanovitch,* 2018-Ohio-4744, ¶ 36, quoting R.C. 2953.23(A); *see also State v. Chamblin*, 2023-Ohio-3129, ¶ 6 (1st Dist.). Relevant here, the statute requires petitioners to file their postconviction petitions "no later than three hundred sixty-five days after the expiration of the time for filing the appeal." R.C. 2953.21(A)(2)(a).

**{¶16}** For postconviction petitions filed beyond that timeframe, a petitioner "must satisfy the jurisdictional requirements in R.C. 2953.23(A)(1) or (2)." *Hatton* at ¶ 37. First, under R.C. 2953.23(A)(2), a trial court has jurisdiction to consider untimely petitions involving cases of "actual innocence as a result of DNA testing."

6

{¶17} Second, and alternatively, a trial court has jurisdiction under R.C. 2953.23(A)(1) to consider an untimely postconviction petition when the petitioner satisfies the statute's two-part test. A petitioner must produce evidence that both (1) shows he was either "unavoidably prevented" from discovering the factual basis for his constitutional error, or that his petition relies on a new federal or state right recognized by the United States Supreme Court, which applies retroactively to his claims, and (2) clearly and convincingly proves "that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted." R.C. 2953.23(A)(1)(a) and (b).

## B. *Harden cannot satisfy the jurisdictional two-part test*

{¶18} Harden's deadline for filing a postconviction petition ran in 2005. Harden concedes that his 2024 petitions were untimely, but he argues that the trial court had jurisdiction to consider his petitions under R.C. 2953.23(A).

{¶19} Because Harden did not have postconviction DNA testing performed, the trial court lacked jurisdiction to consider his postconviction petitions unless he satisfied the two-part test under R.C. 2953.23(A)(1). And Harden does not allege that a new federal or state right applies retroactively to his case. As a result, the trial court's jurisdiction to entertain the petitions hinged on whether Harden met both factors: "(1) was unavoidably prevented from discovering the facts on which he must rely to present his claim for relief **and** (2) . . . but for constitutional error at trial, no reasonable fact-finder would have found him guilty." (Emphasis added.) *Hatton*, 2022-Ohio-3991, at ¶ 39.

{¶20} Harden and the State contest whether Harden could have discovered Lawson's misconduct. Harden cites the fact that Lawson's misconduct became known in 2009, well past his 365-day deadline under R.C. 2953.21(A)(2)(a). For its part, the

State cites Harden's post-deadline delay, from 2012 to 2024, to argue that the trial court lacked jurisdiction over his petitions.[1]

**{¶21}** But we need not reach this question because Harden pleaded guilty to the endangerment charge. As such, his petitions cannot show that, absent the alleged "constitutional error at trial," no reasonable juror would have convicted him. *See* R.C. 2953.23(A)(2). Most Ohio courts have held that R.C. 2953.23(A)(2) is unavailable for untimely petitions challenging a conviction based on a guilty plea. *See State v. Moon,* 2015-Ohio-1550, ¶ 33 (8th Dist.) ("[T]his court and others have previously held that where a defendant enters a guilty plea, R.C. 2953.23(A)(1)(b) — requiring a defendant to establish by clear and convincing evidence that no reasonable factfinder would have found him guilty but for constitutional error at trial—does not apply."); *see also State v. Estridge,* 2006-Ohio-5310, ¶ 8 (2d Dist.); *State v. Smith*, 2005-Ohio-4910, ¶ 25 (4th Dist.); *State v. Clark*, 2008-Ohio-194, ¶ 18 (5th Dist.); *State v. Davis*, 2022-Ohio-4767, ¶ 28-29 (6th Dist.); *State v. Demyan,* 2012-Ohio-3634, ¶ 4 (9th Dist.); *State v. Hairston*, 2013-Ohio-3834, ¶ 8 (10th Dist.); *State v. Pough*, 2004-Ohio-3933, ¶ 17 (11th Dist.); *State v. Coleman*, 2023-Ohio-4354, ¶ 29 (12th Dist.).

**{¶22}** As some courts have explained, absent a trial and a record of the evidence used to convict the defendant, a court considering a postconviction petition cannot determine if no reasonable factfinder would have found the defendant guilty. *See Moon* at ¶ 34 (collecting cases). The *Moon* court recognized an exception to this general rule for ineffective-assistance claims based on counsel's failure to file a

---

[1] Ohio courts describing a petitioner's burden under R.C. 2923(A)(1)(b) often ask whether the petitioner "was unavoidably prevented from discovering [the relevant fact] within the statutory deadline." *State v. Johnson,* 2024-Ohio-134, ¶ 30; *see State v. Howard,* 2016-Ohio-504, ¶ 35 (10th Dist.); *see also State v. Montgomery,* 2016-Ohio-7527, ¶ 52 (6th Dist); *State v. Brown*, 2022-Ohio-519, ¶ 11 (4th Dist.).

motion to suppress that, if granted, would have excluded all of the State's evidence from trial. *Id.* at ¶ 36. But those circumstances are not present here.

**{¶23}** Harden compares his petitions to actions filed by one of Lawson's other clients who sought relief from their convictions based on Lawson's misrepresentations during plea bargaining. *See State v. Smith,* 2008-Ohio-3789, ¶ 27 (1st Dist.). In *Smith,* this court held that the record supported Smith's postconviction claim that Lawson's misrepresentations resulted in Smith entering a no-contest plea that was involuntary, warranting an evidentiary hearing on Smith's claims. *Id.* at ¶ 25. But Smith did not file an untimely petition and did not have to clear R.C. 2953.23(A)(1)(b)'s hurdle of showing that no reasonable juror would have convicted him.[2]

**{¶24}** In sum, we hold that the trial court lacked jurisdiction to entertain Harden's untimely petitions because he is unable to satisfy R.C. 2953.23(A)(1)(b), as Harden was convicted by plea. Rather than denying Harden's petitions, the trial court should have dismissed them. *See State v. Chamblin*, 2023-Ohio-3129, ¶ 9 (1st Dist.).

### III. Conclusion

**{¶25}** We overrule the assignments of error, modify the trial court's judgments to reflect the dismissal of Harden's petitions, and affirm the judgments as modified.

Judgments affirmed as modified.

---

[2] Smith's postconviction petition was ultimately denied after an evidentiary hearing on remand. *See State v. Smith,* 2019-Ohio-3642, ¶ 16 (1st Dist.). Smith continued to attack his conviction and, in 2017, moved to withdraw his plea under Crim.R. 32.1 based on an ineffective-assistance-of-counsel claim similar to Harden's claim in this case. *Id.* at ¶ 25. A postsentence motion to withdraw a plea under Crim.R. 32.1 must demonstrate that withdrawing the plea is "necessary 'to correct manifest injustice.'" *Id.* at ¶ 32, quoting Crim.R. 32.1. We held that the trial court abused its discretion by denying Smith an evidentiary hearing based, in part, on an affidavit from Lawson in support of Smith's claims. *Id.* at ¶ 38-40. We also held that the trial court had jurisdiction to consider Smith's motion to withdraw his plea, which was filed more than ten years after he was convicted, because his plea relied on evidence outside of the record. *Id.* at ¶ 32. Motions under Crim.R. 32.1 "to withdraw guilty or no contest pleas and postconviction relief petitions exist independently." *State v. Bush*, 2002-Ohio-3993, ¶ 14. Indeed, the Supreme Court of Ohio has held that R.C. 2953.23 is inapplicable to Crim.R. 32.1, which does not include a time limitation. *Id.*

**NESTOR, J.,** concurs.
**KINSLEY, P.J.,** concurs separately.

**KINSLEY, P.J.,** concurring separately.

{¶26}  With regret, I concur in the conclusion that Harden's postconviction petitions are untimely and must be dismissed, as the law enacted by the Ohio Legislature compels that result. I write separately, however, because I believe that Harden deserves a different outcome, one that is unfortunately beyond the power of this court to create.

{¶27}  If it were up to me, I would expunge Harden's child-endangerment conviction. But that is not my decision to make. It is exclusively the purview of the legislative branch to determine eligibility for expungement, and the legislature has deemed Harden's conviction ineligible for this remedy. *See State v. Reed*, 2005-Ohio-6251, ¶ 16-17 (discussing former version of R.C. 2953.36(D), which barred expungement of a felony offense involving a child under the age of 18); R.C. 2953.32(A)(1)(d) (prohibiting expungement for convictions in which the victim of the offense was less than 13 years old); R.C. 2953.32(A)(1)(b) (prohibiting expungement for convictions of a felony offense of violence).[3] In recent years, however, the legislature has amended its expungement statutes to include additional types of felonies and to create new remedies for those seeking authorization to work despite their criminal histories. *See State v. J.B.*, 2024-Ohio-1879, ¶ 15 (1st Dist.). Harden presents a compelling case for why the legislature should consider expanding eligibility for expungement to people like him.

---

[3] Convictions under R.C. 2919.22(B)(1) are felony offenses of violence. *See State v. Q.M.E.*, 2022-Ohio-1745, ¶ 7, citing R.C. 2901.01(A)(9)(a).

**{¶28}** As reflected in the record before us, the offense Harden seeks to expunge arose within the context of his nuclear family. Now, more than two decades on, Harden's family has apparently reached a place of healing. His family fully supports him. He successfully completed community control in 2009. Nothing in the record suggests that Harden presents any current danger to the public, his family, or himself. To the contrary, the record tells the story of a dedicated husband, father, and advocate for justice who deserves to outlive the stigma of his past. But expunging his conviction would not just benefit Harden. It would also help his family overcome the pain of his prosecution. If the legislature again amends its expungement statutes, it might consider including individuals like Harden in its reforms.

**{¶29}** The legislative branch is not the only agency with the power to alter Harden's future. The prosecutor's office also has the power to agree that Harden can withdraw his guilty plea to correct a manifest injustice. *See* Crim.R. 32.1 (governing motions to withdraw guilty pleas). After all, at first blush, Harden presents a persuasive argument that he was misled by his attorney, who at the time was suffering from a serious substance-use disorder, into thinking he could expunge the offense to which he pled guilty. Only after serving his sentence did Harden learn this was not the case. And Harden represents that he would not have pled guilty had he known that he was agreeing to a lifetime criminal record.

**{¶30}** Given the unique circumstances of his situation, I agree with Harden that the law disserved him in this case. But the court must enforce the law as it is written. Absent further action from the legislature or prosecutor, Harden's post-conviction petitions are time-barred and must be dismissed.